# IN THE U.S. DISTRICT COURT
## FOR THE MIDDLE DISTIRCT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| ANTHONY LADD and NICHOLAS BRINDLE, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:20-CV-00626 |
| v. | ) ) | CLASS ACTION COMPLAINT JURY TRIAL DEMANDED |
| NASHVILE BOOTING, LLC | ) ) | Judge Eli J. Richardson |
| Defendant. | ) ) | Magistrate Judge Alistair E. Newbern |

## <u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT NASHVILLE BOOTING, LLC'S MOTION TO DISMISS</u>

Mark Hammervold, TN #31147
Daniel Kotchen (*pro hac vice*)
Daniel Low (*pro hac vice*)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
mhammervold@kotchen.com;
dkotchen@kotchen.com
dlow@kotchen.com

*Attorneys for Plaintiffs and
the Putative Class*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................................................ **ii**

**TABLE OF AUTHORITIES** ...................................................................................................... **iii**

I.      FACTUAL ALLEGATIONS ........................................................................................ 1

II.     LEGAL STANDARD .................................................................................................. 3

III.    ARGUMENT ............................................................................................................... 4

      A.      Plaintiffs Have Stated Claims for Negligent Bailment and Negligent Bailment *Per Se* (Count I and II) as Vehicle Damage is Not an Element of Either Claim ........... 4

      B.      Plaintiffs Have Sufficiently Pled Each Required Element of Conversion (Count III). ......................................................................................................................... 8

      C.      Plaintiffs Have Stated a Claim for Trespass to Chattel (Count IV) and Have Specifically Pled the Element of Intent. .............................................................. 11

      D.      Plaintiffs Have Pled Compensable Damages in Connection with Counts I-IV.... 12

           1.      *Plaintiffs May Recover for Lost Use of their Vehicles.* ............................. *13*

           2.      *Plaintiffs May Recover for All Other Damages Suffered, Including Inconvenience, Frustration, and Loss of Enjoyment of Life.* .................... *15*

      E.      Plaintiffs Do Not Object to Dismissal of Count V (Violation of 42 U.S.C. § 1983) ......................................................................................................................... 17

IV.     CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Accuff v. Vinsant* 443 SW 2d 669 (Tenn. Ct. App. 1969)............................................................. 16

*Aegis Investigative Grp. v. Metro. Gov't of Nashville & Davidson County*, 98 S.W.3d 159 (Tenn. Ct. App. 2002)............................................................................................................. 5, 6

*Anderson v. Lamb's Auto Service,* No. W2008-01305-COA-R3-CV, 2009 Tenn. App. LEXIS 147 (Tenn. Ct. App. Mar. 5, 2009)) ....................................................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 3

*Beaty v. McGraw*, 15 S.W.3d 819 (Tenn. Ct. App. 1998) ................................................... 13, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 3

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................................ 4

*Crowe v. First Am. Nat'l Bank,* No. W2001-00800-COA-R3-CV, 2001 Tenn. App. LEXIS 950, (Tenn. Ct. App. Dec. 10, 2001)........................................................................... 13, 14, 15

*Dwyer v. Southwest Airlines Co.,* No. 3:16-cv-03262, 2019 U.S. Dist. LEXIS 77844 (M.D. Tenn. May 8, 2019)............................................................................................................... 16

*First Nat. Bank v. Barbee*, 150 Tenn. 355 (Tenn. 1924) ................................................................ 9

*Garner v. Coffee Cnty. Bank*, 2015 Tenn. App. LEXIS 873 (Tenn. Ct. App. Oct. 23, 2015)...... 11

*General Electric Credit Corp. v. Kelly & Dearing Aviation*, 765 S.W.2d 750 (Tenn. Ct. App. 1988) ....................................................................................................................... 10, 11

*Hill v. Snyder*, 878 F.3d 193 (6th Cir. 2017) .................................................................................. 3

*In re Rospatch Sec. Litig,*, 760 F. Supp. 1239 (W.D. Mich. 1999)............................................... 4

*Louisville & N. R. v. Conasauga River Lumber*, 25 Tenn. App. 157 (Tenn. Ct. App. 1941).........
.................................................................................................................................... 5, 6, 7, 10

*Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882 (6th Cir. 2020) ....................... 3

*Nance v. Kilpatrick,* No. 1:18-CV-11-TAV-CHS, 2019 U.S. Dist. LEXIS 52411, (E.D. Tenn. Mar. 23, 2019)................................................................................................................. 12

*Nashville, C. & S. L. R. Co. v. Price*, 125 Tenn. 646, 652 (Tenn. 1911).................................... 15

*Nevill v. City of Tullahoma*, 756 S.W.2d 226 (Tenn. 1988) ......................................................... 5

*Parker v. Clayton*, No. M2017-02556-COA-R3-CV, 2019 Tenn. App. LEXIS 451 (Tenn. Ct. App. Sept. 10, 2019)............................................................................................................... 13

*Perkins v. Brown*, 132 Tenn. 294, 177 S.W. 1158 (1915) ........................................................... 13

*PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012) ............................................................. 8, 10, 12

*Prewitt v. Brown*, 525 S.W.3d 616 (Tenn. App. Ct. 2017)......................................................... 14

*Richardson v. Stacey*, No. M2001-02167-COA-R3-CV, 2002 Tenn. App. LEXIS 588 (Tenn. Ct. App. Aug. 13, 2002) ...................................................................................................... 15

*Richter v. Rosenberg*, No. W2007-01486-COA-R3-CV, 2008 Tenn. App. LEXIS 299 (Tenn. Ct. App. May 20, 2008)........................................................................................................ 10, 12

*Smith v. Owen*, 841 S.W.2d 828 (Tenn. Ct. App. 1992)............................................................... 5

*Tinker v. Wix Co.,* No. 712, 1986 Tenn. App. LEXIS 2939 (Tenn. Ct. App. Apr. 22, 1986).13, 15

*Tipton v. CSX Transp., Inc.*, No. 3:15-cv-311-TAV-CCS, 2017 U.S. Dist. LEXIS 227318 (E.D. Tenn. Jul. 11, 2017) .............................................................................................................. 15

*Walker v. Guest House at Graceland LLC*, No. 2:17-cv-02762-TLP-cgc, 2018 U.S. Dist. LEXIS 213578 (W.D. Tenn. Dec. 19, 2018).................................................................................... 4

*West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545 (Tenn. 2005) ..................................... 4

*Yellow Bus Line v. Brenner*, 213 S.W.2d 626 (Tenn. Ct. App. 1948) ........................................ 17

**Statutes**

Tenn. Code Ann. § 24-5-111 ............................................................................................... 7
Tenn. Code Ann. § 29-39-102 ........................................................................................... 16

**Other Authorities**

Nashville Ordinance § 6.81.170 ................................................................................. passim
Nashville Ordinance 6.81.010 ............................................................................................ 5
Nashville Ordinance 6.81.090 ............................................................................................ 6
T.P.I. Civil 8.65 ................................................................................................................ 10

iv

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANT NASHVILLE BOOTING, LLC'S MOTION TO DISMISS

Plaintiffs filed this putative class action to remedy Defendant Nashville Booting, LLC's systemic and wrongful practice of immobilizing vehicles with booting devices beyond the period of time authorized by law. The operative First Amended Complaint lays out, in detail, Nashville Booting's efforts to maximize the number of vehicles it immobilizes with its booting devices to enhance profits, and its routine failure to timely remove its booting devices within one hour of a vehicle owner's request to do so, in violation of Nashville Ordinance § 6.81.170(E). 1st Am. Compl. ("FAC") ¶¶ 1-8, 23-48 (Dkt. 14) (hereafter, "FAC")

Despite this, Nashville Booting seeks to dismiss the complaint in its entirety based on unfounded arguments that facts alleged in the First Amended Complaint are insufficient to support Plaintiffs' claims. But Nashville Booting's Motion to Dismiss ("MTD") (Dkt. 20) should be denied as to Counts I-IV because Plaintiffs have plausibly stated claims for negligent bailment, negligent bailment *per se*, conversion, and trespass to chattel, and Plaintiffs are entitled to recover the compensatory damages and injunctive relief they seek in the FAC. Plaintiffs agree to withdraw their claim for violations of 42 U.S.C. § 1983 (Count V), and do not object to Nashville Booting's Motion to Dismiss as to this claim.

## I. FACTUAL ALLEGATIONS

Nashville Ordinance § 6.81.170(E) places a strict limit on the amount of time a professional parking enforcement company like Nashville Booting can keep a booting device on a vehicle. FAC ¶ 7 (Dkt. #14). When a vehicle owner or operator calls to request removal of a booting device from his or her vehicle, Nashville Booting must remove the booting device within one hour. *Id.* Plaintiffs allege that Nashville Booting flouts Nashville Ordinance § 6.81.170(E) and systemically fails to timely remove booting devices from immobilized vehicles within this one-hour timeframe, resulting in the

1

wrongful and unauthorized interference with the owner/operator's right to possession and use of his or her vehicle. FAC ¶¶ 8-9.

Nashville Booting deploys significant resources to ensure that vehicles in violation of private property owners' parking rules are quickly booted (often within minutes of the infraction). *Id.* ¶¶ 2, 5. This practice is designed to maximize Nashville Booting's profits as vehicle owners and operators must pay Nashville Booting $50.00 for the booting device to be removed. *Id.* ¶¶ 1-2, 26-27, 44-45. But after placing a booting device on a vehicle, Nashville Booting routinely fails to remove the boot within one hour of the owner/operator's request, in direct violation of Nashville Ordinance § 6.81.170(E) and the vehicle owner or operator's right to use and enjoy the vehicle. *Id.* ¶¶ 7, 99.

Plaintiffs were victims of Nashville Booting's unlawful booting practices. Plaintiff Anthony Ladd called to request that Nashville Booting remove the boot from his vehicle on October 26, 2019 at 8:51 a.m. *Id.* ¶¶ 50-52. However, Nashville Booting did not remove the boot from Mr. Ladd's vehicle until 5:39 p.m., more than eight hours later. *Id.* ¶ 55. As a result of Nashville Booting's deliberate failure to timely remove its boot from Mr. Ladd's vehicle, Mr. Ladd was denied the use and enjoyment of his vehicle and spent most of the day waiting in frustration for Nashville Booting to end its unlawful immobilization of his vehicle. *Id.* ¶ 57.

Similarly, Plaintiff Nicholas Brindle called to request removal of the boot from his vehicle on June 21, 2018 at 4:41 p.m. *Id.* ¶¶ 62-64. Mr. Brindle waited outside by his car in 90-degree heat for over an hour, but Nashville Booting did not send a technician to unboot his car. *Id.* ¶¶ 65-70. After Nashville Booting's one-hour deadline had passed and its call service could not give Mr. Brindle any assurance as to when Nashville Booting would come to remove the boot, Mr. Brindle had his pregnant wife come to drive him home. *Id.* When a Nashville Booting technician finally called Mr. Brindle at 6:27 p.m., he was no longer by his car. *Id.* ¶ 71. While the technician could have removed the boot from Mr. Brindle's car without Mr. Brindle being present, the technician chose not to do so, because Nashville Booting wanted Mr. Brindle to be physically present to pay Nashville Booting its $50.00

2

fee. *Id.* Mr. Brindle's car remained booted overnight, and Mr. Brindle had to coordinate with Nashville Booting again the next morning to have the boot removed. *Id.* ¶¶ 72-73.

Plaintiffs' experiences are typical of the class and bring this action on behalf of themselves and a class of "[a]ll persons who have had a vehicle in their possession immobilized by Nashville Booting LLC in Nashville for longer than one hour after requesting removal of the immobilization device, from three years prior to the filing of this lawsuit up to the date the class is certified.*" Id.* ¶ 75. The Better Business Bureau has given Nashville Booting an "F" grade and has issued an "alert" about "a pattern of complaint[s] alleging billing and collection issues and customer service issues [by Nashville Booting]." *Id.* ¶ 47. These issues specifically include a pattern of complaints that "although Metro Nashville Ordinance 6.81.170(E) states that it is prohibited and unlawful to fail to remove the boot within one hour of being contacted by the owner or operator of the vehicle that has been booted, they had to wait anywhere from over 1 hour to 5 hours." *Id.*; *see also id.* ¶ 48 (sampling narratives of complaints received and published by the Better Business Bureau concerning Nashville Booting).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 887 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating a motion to dismiss, "[c]ourts must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). "'Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' the court must deny a motion to dismiss

3

for failure to state a claim." *In re Rospatch Sec. Litig,*, 760 F. Supp. 1239, 1246 (W.D. Mich. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III.     ARGUMENT

Nashville Booting's Motion to Dismiss should be denied as to Counts I-IV of Plaintiffs' First Amended Complaint because Plaintiffs have sufficiently stated claims for (A) negligent bailment and negligent bailment *per se*, (B) conversion, and (C) trespass to chattel, and (D) Plaintiffs have pled compensable damages. Plaintiffs withdraw their claim for violations of 42 U.S.C. § 1983 (Count V).

**A.     Plaintiffs Have Stated Claims for Negligent Bailment and Negligent Bailment *Per Se* (Count I and II) as Vehicle Damage is Not an Element of Either Claim.**

Nashville Booting seeks to dismiss Counts I and II of the First Amended Complaint, arguing incorrectly that Plaintiffs must allege that their vehicles were damaged by Nashville Booting to state a claim for negligent bailment or negligent bailment *per se*. MTD at 12. But Nashville Booting's argument that a bailor cannot recover for a bailee's wrongful detention of undamaged property is incorrect as a matter of law and should be denied.

To state a claim for negligence under Tennessee law, a plaintiff must plead facts sufficient to show: "'(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.'" *Walker v. Guest House at Graceland LLC*, No. 2:17-cv-02762-TLP-cgc, 2018 U.S. Dist. LEXIS 213578, *6-7 (W.D. Tenn. Dec. 19, 2018) (quoting *West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)). To establish negligence *per se*, a plaintiff must demonstrate that: (1) "the defendant violated a statute or ordinance which 'imposes a duty or prohibits an act for the benefit of a person or the public;'" (2) "the injured party was within the class of persons whom the legislative body intended to benefit

4

and protect;" and (3) "that such negligence was the proximate cause of the injury." *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992) (quoting *Nevill v. City of Tullahoma*, 756 S.W.2d 226, 232-233 (Tenn. 1988)).

Here, Nashville Booting owed a duty of care to Plaintiffs and members of the putative class whose vehicles it booted because it immobilized their vehicles pursuant to the authority and limits of the Nashville Booting Ordinance. Nashville Booting's immobilization of Plaintiffs and the class' vehicles constituted a "constructive bailment" or "bailment by operation of law" which arises "where the [party] having possession of a chattel holds it under such circumstances . . . [imposed by] the law" and must "on principals of justice, keep it safely and restore it or deliver it to the owner" under certain conditions or within a set period of time. *See Aegis Investigative Grp. v. Metro. Gov't of Nashville & Davidson County*, 98 S.W.3d 159, 163 (Tenn. Ct. App. 2002). Nashville Booting breached its duty of care owed to Plaintiffs and the class under this constructive bailment when it failed to remove its booting device from the owners and operators' vehicles within one hour of being requested to do so, as required by Nashville Ordinance. *See* FAC ¶¶ 7, 55, 69-72; *Louisville & N. R. v. Conasauga River Lumber*, 25 Tenn. App. 157, 160 (Tenn. Ct. App. 1941) (when bailments are for a "definite term," the bailor has a duty to return the property "at the expiration of the [appointed] time").

Nashville Booting's violation of Nashville Ordinance § 6.81.170(E) also constituted negligent bailment *per se* because the ordinance's prohibition against booting a vehicle for longer than one hour after a request is made for the boot to be removed was enacted to benefit the public, and was designed to protect Plaintiffs from the exact type of injuries they allege in this case. *See Owen*, 841 S.W.2d at 831; *see* Nashville Ordinance 6.81.010 (noting that the purpose of the Nashville Booting Ordinance is "the protection and welfare of the public."); *see also* Nashville

5

Ordinance 6.81.090(A) (prohibiting "employees . . . engaged in the practice of booting [from] engag[ing] in activities or practices contrary to the public safety or welfare").

Nashville Booting does not challenge the sufficiency of Plaintiffs' pleading with respect to the duty, breach, or causation elements of these claims, nor does it argue that a violation of Nashville Ordinance § 6.81.170(E) cannot support a claim of negligence *per se*. MTD at 12. Rather, Nashville Booting argues that a bailor can only recover against a bailee for property damage, and that Plaintiffs have failed to state a claim for negligent bailment because such a claim "requires allegations of damage to a bailer's property, sustained while in a bailee's possession." *Id*. But Nashville Booting's argument misrepresents both Tennessee law and the holding of the one case cited in support of its argument.

Tennessee law permits a bailor to recover damages against a bailee when the bailee wrongfully retains the bailor's chattel after a bailment of limited duration has expired, regardless of whether the property was damaged while in the bailee's possession. *See Louisville & N. R.*, 25 Tenn. App. at 160; *cf. Aegis Investigative Group*, 98 S.W.3d 159, 163 ("Where the bailment is for an indefinite time, there can be no damages for the wrongful detention until after demand."). In *Louisville & N. R. Co. v. Conasauga River Lumber Co.*, a railroad company sought to recover compensation against a lumber company that had retained its property after the expiration of a limited duration bailment contract. 25 Tenn. App. at 158. The court recognized when a "'bailment is limited as to time, the bailment is ended at the expiration of the time, and the bailee must . . . redeliver the property . . . *and if he does not the owner may hold him for conversion*.'" *Id*. at 160 (citation omitted) (emphasis in original). Since the lumber company acknowledged that it had retained the chattel at issue beyond the bailment term, "the only question [was] the compensation

to be paid by the bailee for the use of the property . . . after the expiration of the [bailment] period." *Id.* at 161.

In moving to dismiss Plaintiffs' negligent bailment claims, Nashville Booting relies exclusively on *Anderson v. Lamb's Auto Service* in arguing that "negligent bailment is a claim that requires allegations of damage to a bailer's property." MTD at 12 (citing No. W2008-01305-COA-R3-CV, 2009 Tenn. App. LEXIS 147, at *14 (Tenn. Ct. App. Mar. 5, 2009)). But the *Anderson* court did not hold – or even suggest in *dicta* – that a bailor cannot recover against a bailee for wrongful retention of chattel where property is undamaged. *See* 2009 Tenn. App. LEXIS 147 at *15-17. In *Anderson*, a plaintiff car owner sued a body shop, claiming that the body shop had negligently painted her car, causing overspray damage. *Id.* at *8-9. To prove that the overspray damage was attributable to the body shop's negligence, she relied on the following statutory evidentiary presumption, *id.* at *14-15, which provides as follows:

> In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee in good condition and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, provided the loss or damage was not due to the inherent nature of the property bailed.

Tenn. Code Ann. § 24-5-111.

*Anderson* is inapposite and does not support dismissal of Counts I and II because unlike the present case, the plaintiff did not claim that the body shop had wrongfully retained her car longer than authorized to do so. If anything, *Anderson* only indicates that the evidentiary presumption supplied by Tenn. Code Ann. § 24-5-111 is not available to Plaintiffs in this case, as they are not seeking to establish property damage to their vehicles while immobilized by Nashville Booting. 2009 Tenn. App. LEXIS 147, *14-15.

Because Plaintiffs have alleged each required element of negligent bailment and negligent bailment *per se*, Nashville Booting's Motion to Dismiss as to these claims (Counts I and II) should be denied.

**B.    Plaintiffs Have Sufficiently Pled Each Required Element of Conversion (Count III).**

Nashville Booting seeks to dismiss Plaintiffs' claim for conversion (Count III), arguing that Plaintiffs have failed to plead the requisite element of intent (i.e., that Nashville Booting intentionally exercised control over Plaintiffs' property). But this argument has no merit because although Nashville Booting intended to eventually return Plaintiffs' vehicles by removing the booting device, and ultimately did so, this fact does not negate Plaintiffs' claims for conversion.

The elements for a claim of conversion are: "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012).

Nashville Booting does not contest (nor can it) that Plaintiffs have sufficiently alleged the first and third elements of conversion. *See* MTD at 13-15. Specifically, Plaintiffs allege that Nashville Booting appropriated Plaintiffs and other putative class members' vehicles for their *own* benefit by applying booting devices to their vehicles to leverage the vehicle owner or operator into paying fees to Nashville Booting and/or its customers. FAC ¶¶ 97-98, 100. Plaintiffs also allege that Nashville Booting's immobilization of their vehicles was "in defiance of the true owner's rights" because Plaintiffs "had a right to the possession and use of their vehicle," and Nashville Booting's immobilization of their vehicles beyond the period of time authorized by law defied these rights. *Id.* ¶¶ 10, 96, 99-101. Plaintiff Nicholas Bindle's experience is an example of how Nashville Booting benefits from this appropriation. *Id.* at ¶¶ 63-70. Mr. Brindle requested Nashville Booting remove its boot from his vehicle and waited by his car for over an hour in 90-

8

degree heat for a technician to come, until he could wait no longer. *Id.* While Nashville Booting could have removed its boot anytime later that night, in Mr. Brindle's absence, "it did not do so, because Nashville Booting wanted Mr. Brindle to be physically present to pay Nashville Booting its $50 fee." FAC ¶ 71. Thus, Nashville Booting continued to boot Mr. Brindle's vehicle – after its constructive bailment had expired – for its own benefit, and in violation of Mr. Brindle's rights, to ensure that Mr. Brindle would pay its fee. *See id.*

Contrary to Nashville Booting's assertion, Plaintiffs have also sufficiently alleged that Nashville Booting's exercise of dominion over its vehicles was intentional. *See* FAC ¶¶ 97-98 (alleging "Nashville Booting deliberately continued to exercise domination over the vehicles of Plaintiffs and other members of the putative class" and that it "specifically intended to continue to impair the value and the use of th[ose] vehicles"). Nashville Booting argues, however, that "intent" is not properly pled without allegations of a demand by Plaintiffs, and refusal by Nashville Booting, to return Plaintiffs' property. MTD at 13. But Plaintiffs satisfy this pleading standard, as both Mr. Ladd and Mr. Brindle repeatedly requested that Nashville Booting remove the booting device from their vehicles. FAC ¶ 52 (noting Mr. Ladd called the (866) 383-6060 number twice "to request that Nashville Booting remove the boot it had placed on his car"); *id.* ¶¶ 63-64, 67, 69-70 (discussing Mr. Brindle's multiple demands that Nashville Booting remove the boot from his car). And Nashville Booting's failure to unboot Plaintiffs' vehicles within one hour of their demand to do so constituted a refusal to return Plaintiffs' property, which amounted to a conversion. *See First Nat. Bank v. Barbee*, 150 Tenn. 355, 367-68 (Tenn. 1924) (holding "demand was in legal effect refused" when bank did not immediately return property upon demand and inferring bank's refusal when it "took no steps at the time to comply with the demand").

The fact that Nashville Booting initially had legal authority to place the boots on Plaintiffs' vehicles and "demonstrated an intent to remove the boots but was merely delayed in doing do," MTD at 15, does not negate Plaintiffs' conversion claim because "intention does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him." *General Electric Credit Corp. v. Kelly & Dearing Aviation*, 765 S.W.2d 750, 753-754 (Tenn. Ct. App. 1988); *see* T.P.I. Civil 8.65 ("If personal property that has been entrusted to another is used . . . for a longer time than was agreed upon by the parties, the person who received the personal property is guilty of conversion."); *Louisville & N. R. Co.*, 25 Tenn. App. at 160 ("If the . . . bailment is limited as to time, the bailment is ended at the expiration of the time, and the bailee must either redeliver the property or dispose of it as the owner directs or excuse his failure, *and if he does not the owner may hold him for conversion*."); *see also Breeden v. Elliott Bros.,* 173 Tenn. 382, 386 (Tenn. 1937) ("Conversion of property by a bailee may be committed in two ways: By acts in derogation of the bailor's title, or by acts in derogation of the bailor's possessory rights.").

Nashville Booting's argument that Plaintiffs have not sufficiently pled intent as Nashville Booting was purportedly acting in good faith and was "merely delayed" in removing the boots, MTD at 13-14, fails for two reasons. First, "wrongful intent" is not required for conversion. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship,* 387 S.W.3d at 554 ("A wrongful intent on the part of the defendant is not an element of conversion and, therefore, need not be proved."); *see Richter v. Rosenberg*, No. W2007-01486-COA-R3-CV, 2008 Tenn. App. LEXIS 299, at *28 (Tenn. Ct. App. May 20, 2008) ("conversion may be innocent and technical"). Second, while not required, Plaintiffs have pled wrongful intent by Nashville Booting, including by alleging that

10

"Nashville Booting has intentionally engaged in a systemic practice of prioritizing applying new booting devices over timely removing previously-placed booting devices within the timeframe required by law" and "has deliberately prioritized its ability to capture additional revenue over Plaintiffs and other members of the putative class' lawful rights to use and enjoy their vehicles." FAC ¶ 99; *see also* FAC ¶¶ 44-45, 47-48.

Finally, Nashville Booting argues that Plaintiffs have failed to state a claim for conversion because it ultimately unbooted Plaintiffs' vehicles. MTD at 15. However, this argument has no merit because "[a] defendant cannot undo his wrong[ful conversion] by merely returning the property to the owner." *General Electric Credit Corp.*, 765 S.W.2d at 753.

### C. Plaintiffs Have Stated a Claim for Trespass to Chattel (Count IV) and Have Specifically Pled the Element of Intent.

Plaintiffs have alleged sufficient facts to support a claim for trespass to chattel (Count IV).

A trespass to chattel occurs when a party "intentionally uses or intermeddles with personal property in rightful possession of another without authorization." *Garner v. Coffee Cnty. Bank*, 2015 Tenn. App. LEXIS 873, *17-18 (Tenn. Ct. App. Oct. 23, 2015). Here, Plaintiffs allege that Nashville Booting intermeddled with their vehicles without authorization when it continued to immobilize their vehicles beyond the period of time it was authorized to do so by law, thereby interfering with Plaintiffs' use and enjoyment of their vehicles. FAC ¶ 98.

Nashville Booting claims that "Plaintiffs have not pled that Nashville Booting *intended* to intermeddle with their vehicles." MTD at 14 (emphasis added). But this is untrue as Plaintiffs allege that "Nashville Booting specifically intended to continue to impair the value and the use of the vehicles by Plaintiffs and other members of the putative class because it is precisely this impaired value of the vehicle that Nashville Booting uses as leverage to force payment of fees to unboot those vehicles." FAC ¶ 98. While Nashville Booting again argues that its intent to

11

intermeddle with Plaintiffs' vehicles was not wrongful, as it intended eventually to remove the boots, this argument fails for the same reasons as discussed above with respect to Nashville Bootings' challenge to Plaintiffs' conversion claim. *See* § III(B), *supra* (citing *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship,* 387 S.W.3d at 554; *Richter*, 2008 Tenn. App. LEXIS 299, at *28).

Nashville Booting's attempt to analogize Plaintiffs' supposed failure to plead the element of intent to *Nance v. Kilpatrick* is without merit. MTD at 14. In *Nance*, the plaintiffs sued a police officer for trespass to chattel when, in responding to a disorderly conduct call, "several household goods were damaged during [the officer's] arrest" of one of the plaintiffs. No. 1:18-CV-11-TAV-CHS, 2019 U.S. Dist. LEXIS 52411, at *3-5, 46-47 (E.D. Tenn. Mar. 23, 2019). The court dismissed the claim because there was "no indication" in the complaint that the officer had "intended to use or intermeddle" with the household items that were damaged, and the complaint specifically acknowledged that the items were damaged because the plaintiff was "thrown into" them and "consequently knocked them over." *Id.* at *47. The court found that the officer's intent – as alleged by the plaintiffs – was "to subdue and arrest … not [to] intermeddle with the … household goods." *Id.* In contrast, Plaintiffs have specifically alleged that Nashville Booting intended to intermeddle with their use and enjoyment of their vehicles, and therefore have sufficiently pled a claim for trespass of chattel. *Compare id.*, *with* FAC ¶ 98.

**D.    Plaintiffs Have Pled Compensable Damages in Connection with Counts I-IV.**

For Counts I-IV, Plaintiffs seek compensatory damages on behalf of themselves and the class for: (1) lost use and enjoyment of their vehicles during the period of time that Nashville Booting unlawfully immobilized those vehicles; and (2) the inconvenience, frustration, and loss of enjoyment of life suffered when waiting for longer than one hour for Nashville Booting to unboot

their vehicles. FAC ¶¶ 57, 69, 72-73, 89, 94, 101 & p. 23 (Prayer for Relief).[1] While Nashville Booting argues that Plaintiffs cannot recover compensatory damages for these types of injuries, this argument is incorrect as a matter of law. *See* MTD at 15-17.

### 1. *Plaintiffs May Recover for Lost Use of their Vehicles.*

Nashville Booting argues that Plaintiffs cannot recover for lost use and enjoyment of their vehicles. MTD at 15-16. However, Nashville Booting is mistaken. In Tennessee, "[w]hen the property that is converted is a vehicle, the plaintiff may be entitled to loss of use damages." *Parker v. Clayton*, No. M2017-02556-COA-R3-CV, 2019 Tenn. App. LEXIS 451, at *29 (Tenn. Ct. App. Sept. 10, 2019) (citing *Crowe v. First Am. Nat'l Bank,* No. W2001-00800-COA-R3-CV, 2001 Tenn. App. LEXIS 950, at *6 (Tenn. Ct. App. Dec. 10, 2001)); *see Tinker v. Wix Co.,* No. 712, 1986 Tenn. App. LEXIS 2939, at *9 (Tenn. Ct. App. Apr. 22, 1986) ("the owner of an automobile used for pleasure [is] entitled to recover for the use of that automobile when that automobile was put out of use due to the defendant's tortious acts even though the owner of the automobile paid nothing for the hire of a substitute automobile." (citing *Perkins v. Brown*, 132 Tenn. 294, 177 S.W. 1158 (1915)). Here, "[d]amages for the wrongful detention of [the vehicles] may be measured . . . by the fair market rental value of the property for the period of detention," i.e., the duration of Nashville Booting's wrongful immobilization of the vehicles with its boots. *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998).

Nashville Booting's argument that loss of use damages are only available when a vehicle has been damaged and requires repairs is based on a misreading of *Prewitt v. Brown*, 525 S.W.3d

---

[1] While Plaintiffs also seek injunctive relief and punitive damages in connection with Counts III and IV of the First Amended Complaint, *see* FAC, p. 23, ¶ 7 & ¶¶ 102, 109, Nashville Booting does not challenge the availability or the appropriateness of this relief. *See* MTD at 15-17. Even if Plaintiffs had not adequately pled an entitlement to compensable damages (which they have), Counts I-VI should not be dismissed because Plaintiffs remain entitled to this other relief, which is not challenged by Nashville Booting's Motion to Dismiss.

13

616 (Tenn. App. Ct. 2017). *See* MTD at 15-16. In *Prewitt,* the court demarcated between the damages available to a plaintiff whose vehicle was damaged (but repairable) and one whose vehicle was completely totaled in a collision. 525 S.W.3d at 623. If the vehicle is repairable, a plaintiff may recover for the cost of the repairs and for loss of use of the vehicle while the vehicle is being repaired. *Id.* However, if the vehicle is totaled, a plaintiff's recovery is limited to the fair market value of the car immediately before the collision. *Id.* The rationale is that a plaintiff who is completely compensated for the fair market value of their car should not also be compensated for its loss of use. *See id.*; *see also Crowe,* 2001 Tenn. App. LEXIS 950, at *14-17. Here, with respect to loss of use damages, Nashville Booting's temporary wrongful detention of Plaintiffs' vehicles is more analogous to a plaintiff's loss of use of their vehicle while it is being repaired than a total loss of their vehicle in a collision. Indeed, this was a holding in *Crowe v. First American National Bank* – another case cited by Nashville Booting that directly contradicts its argument. *See* MTD at 15-16.

In *Crowe*, a truck owner sued a bank for conversion of his vehicle after the bank wrongfully repossessed his truck. 2001 Tenn. App. LEXIS 950, at *1-2. Although the original sale price of the truck was only $27,394.48, the jury awarded the truck driver $250,000 in damages to compensate him for lost commercial profits sustained due to its loss of use. *Id.* The court of appeals found that "[t]he law in Tennessee on loss of use damages in conversion cases can be [properly] compared to collision cases" and that the truck driver *was* entitled to loss of use damages based on its review of cases similar to *Prewitt*." *Id.* at *14-17.[2]

---

[2] The Court ultimately reduced the truck owner's loss of use damages because the evidence presented in support of his claim for lost profits at trial was too "speculative" and "uncertain," particularly given the truck owner's duty to mitigate consequential damages. *Id.* at 27-28. Here, Plaintiffs and the putative class will not face the same issues because they are not seeking lost profits, and loss of use damages can be established through the presentation of evidence concerning the fair market rental value of the

14

## 2. Plaintiffs May Recover for All Other Damages Suffered, Including Inconvenience, Frustration, and Loss of Enjoyment of Life.

Plaintiffs and the putative class can also recover damages for their inconvenience, frustration, and loss of enjoyment of life resulting from Nashville Booting's wrongful detention of their vehicles. Nashville Booting's argument to the contrary misstates Tennessee law and should be rejected. MTD at 16.

A "plaintiff's damages in an action for conversion are measured by the sum necessary to compensate him for *all actual losses or injuries* sustained as a natural and proximate result of the defendant's wrong." *Crowe*, 2001 Tenn. App. LEXIS 950, at *18 (emphasis added). This includes personal damages, such as inconvenience and emotional distress. *See e.g. Richardson v. Stacey*, No. M2001-02167-COA-R3-CV, 2002 Tenn. App. LEXIS 588, at *17 (Tenn. Ct. App. Aug. 13, 2002) ("A party subjected to a nuisance may be entitled to several types of damages which include . . . personal damages, such as inconvenience and emotional distress, and injury to the use and enjoyment of the property."); *Nashville, C. & S. L. R. Co. v. Price,* 125 Tenn. 646, 652, 656 (Tenn. 1911) (affirming award of damages against railroad company who wrongfully ejected a passenger from its sleeper car based on testimony that plaintiff's removal from the car "caused her considerable inconvenience and suffering" and noting that a plaintiff should not be "inconvenienced, discommoded, and damaged without redress"); *see generally Tipton v. CSX Transp., Inc.*, No. 3:15-cv-311-TAV-CCS, 2017 U.S. Dist. LEXIS 227318 (E.D. Tenn. Jul. 11, 2017) (certifying class of plaintiffs seeking damages for temporary loss of use and enjoyment of property and emotional damages in connection with negligence and nuisance claims).

---

vehicles wrongfully detained by Nashville Booting for the period of its detention. *See Beaty*, 15 S.W.3d at 827. Additionally, Plaintiffs did not have a duty to mitigate their damages by renting a replacement car. *See Tinker,* 1986 Tenn. App. LEXIS 2939, at *9.

15

Nashville Booting claims that Tennessee categorically does not allow a plaintiff to recover for "lost time – other than in connection with a loss of earning capacity claim," but its authorities only involve claims for personal injuries, not conversion or any other intentional tort, and in any event, they are not supportive of Nashville Booting's argument. MTD at 16 (collecting cases). In *Dwyer v. Southwest Airlines Co.,* for instance, the plaintiff sought to amend her personal injury complaint to seek economic damages for "loss of household services." No. 3:16-cv-03262, 2019 U.S. Dist. LEXIS 77844, at *4 (M.D. Tenn. May 8, 2019). The operative complaint already sought non-economic damages for "past and future emotional distress" and "loss of enjoyment of life." *Id.* at *6.[3] The court denied the motion to amend because it found that Tennessee did not recognize a claim for "loss of household services" as part of lost earning capacity, but – importantly – the court observed that "some components of the damages the plaintiff characterizes as 'household services' may be recoverable as part of her damages for pain and suffering . . . or loss of enjoyment of life." *Id.* at *21. The court noted that "loss of enjoyment of life" damages can include compensation for missed experiences, such as "recreational or family activities," "reading," or "cooking or gardening," and also noted that a plaintiff can recover for "inconvenience," such as "having to devote two hours to perform a task that previously took only one" for certain claims. *Id.* at *12.

Nashville Booting's remaining authorities, *Accuff v. Vinsant* and *Yellow Bus Line v. Brenner*, both address the standard used for calculating loss of earning capacity in personal injury cases – they do not hold that loss of time damages are unavailable in a conversion case. MTD at 16 (citing *Accuff v. Vinsant* 443 SW 2d 669, 733 (Tenn. Ct. App. 1969); *Yellow Bus Line v.*

---

[3] In Tennessee, the distinction between economic and non-economic damages is significant because Tenn. Code Ann. § 29-39-102 generally imposes a statutory cap on non-economic damages per claimant.

16

*Brenner*, 213 S.W.2d 626, 631 (Tenn. Ct. App. 1948)). Because Plaintiffs are not seeking damages for lost earning capacity, these cases are inapposite.

    **E.**    **Plaintiffs Do Not Object to Dismissal of Count V (Violation of 42 U.S.C. § 1983).**

Plaintiffs withdraw their claims for violations of 42 U.S.C. § 1983 (Count V). *See* FAC ¶¶ 110-16.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Nashville Booting's Motion to Dismiss as to Counts I-IV of the First Amended Complaint. To the extent the Court grants any aspect of Nashville Booting's motion, Plaintiffs request dismissal be without prejudice and with leave to amend.

DATED: October 31, 2020

    Respectfully submitted,

    By: /s/Mark Hammervold
    Mark Hammervold, TN #31147
    Daniel Kotchen (*pro hac vice*)
    Daniel Low (*pro hac vice*)
    **KOTCHEN & LOW LLP**
    1745 Kalorama Road NW, Suite 101
    Washington, DC 20009
    Telephone: (202) 471-1995
    mhammervold@kotchen.com;
    dkotchen@kotchen.com
    dlow@kotchen.com

    *Attorneys for Plaintiffs and*
    *the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 31, 2020, a true and correct copy of the foregoing filing was served upon all counsel of record through the ECF electronic filing system.

    */s/ Mark Hammervold*

17