IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANTHONY LADD, et al.,                    )
                                         )
      Plaintiffs,                      )          NO. 3:20-cv-00626
                                         )
v.                                       )          JUDGE RICHARDSON
                                         )
NASHVILLE BOOTING, LLC,                  )
                                         )
      Defendant.                       )


## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Dismiss. (Doc. No. 19, "Motion"),
supported by a memorandum of law (Doc. No. 20, "Memorandum in Support"). Plaintiffs filed a
response. (Doc. No. 26, "Response").[1] Defendant replied. (Doc. No. 28, "Reply"). The matter is
ripe for review.

For the reasons discussed below, the Court will grant Defendant's Motion as to Counts V
(§ 1983 violations) and II (negligence per se) and deny Defendant's Motion as to Counts I
(negligent bailment), III (conversion), and IV (trespass to chattels).

## BACKGROUND[2]

---

[1] The pagination of the author/filer of the Response is different from the ECF pagination. For
example, the filer's page 1 is ECF's page 5. *See* Doc. No. 26. The Court herein will use the ECF
pagination for sake of consistency.

[2] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. No. 14) and are
accepted as true for purposes of the Motion. The Amended Complaint is the operative complaint
in this matter. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). To the
extent that allegations referred to below are legal conclusions, however, they are not accepted as

Plaintiffs have brought a class action against Defendant, a parking enforcement company. (Doc. No. 14 at ¶ 1). The proposed class includes "[a]ll persons who have had a vehicle . . . immobilized by Nashville Booting LLC [ ] for longer than one hour after requesting removal of the immobilization device, from three years prior to the filing of the lawsuit up to the date the class is certified." (*Id*. at ¶ 75). Defendant enters into agreements with private property owners to "boot" vehicles that do not belong on owners' property. (*Id*. at ¶ 2). Nashville Ordinance § 6.81.170(E) authorizes Defendant to boot vehicles but requires removal within one hour *if* a vehicle owner contacts a booting company to request removal. (*Id*. at ¶ 7). Plaintiffs allege that Defendant has continually violated Nashville Ordinance 6.81.170(E) by "unlawfully interfer[ing]" with Plaintiffs "use and enjoyment" of their vehicles by failing to remove booting devices within one hour of Plaintiffs requesting Defendant to do so. (*Id*. at ¶ 10).

Plaintiff asserts causes of action for (i) negligent bailment, (ii) negligent bailment per se,[3] (iii) conversion, (iv) trespass to chattels, and (v) violations of 42 U.S.C. § 1983.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause

---

true but rather are identified as merely what Plaintiff claims, and not what the Court is accepting as true for purposes of the Motion.

[3] Because negligent bailment per se *in particular* is not actionable under Tennessee law, the Court will construe this claim as a general negligence per se claim.

of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

judgment. *Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of specificity and thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## **DISCUSSION**

Via the Motion, Defendant requests dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6).[4] Doc. No. 19. Specifically, Defendant contends that Plaintiffs have failed (i) to state a claim under 42 U.S.C. § 1983; (ii) to state a claim for negligent bailment; (iii) to state claims for conversion and trespass to chattels; and (iv) to identify any compensable damages. Doc. No. 20 at 1. The Court will address each contention in turn.

(i)    Alleged Violation of 42 U.S.C. § 1983

Defendant argues that Plaintiffs' § 1983 claim should be dismissed because Defendant is not a governmental actor and therefore no state action has taken place. 42 U.S.C. § 1983 provides that:

---

[4] Defendant does not address Plaintiffs' claim of negligence per se, but the Court will address it herein.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.A. § 1983. A requirement common to all § 1983 claims is that "a plaintiff must allege that [s]he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Paige v. Coyner*, 614 F.3d 273, 278 (6th Cir. 2010) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). "This so-called state-actor requirement becomes particularly complicated in cases . . . where a private party is involved in inflicting the alleged injury on the plaintiff." *Paige*, 614 F.3d at 278.

In their Response, Plaintiffs state that they "agree to withdraw their claim for violations of 42 U.S.C. § 1983 (Count V), and do not object to Nashville Booting's Motion to Dismiss as to this claim." Doc. No. 26 at 1. The Court agrees with Defendant that there is no state action here and accepts Plaintiffs' withdrawal, and thus will dismiss Plaintiffs' Count V claim for violations of § 1983.[5]

(ii)     Alleged Negligence[6]

_____

[5] Although, there are other requirements for establishing a § 1983 violation, there is no need to discuss them herein because Defendant correctly contends, and Plaintiff does not dispute, that there is no state action here.

[6] Defendant's Motion, Memorandum and Reply address only Plaintiffs' claim of negligent bailment, without separately or specifically addressing Plaintiffs' claim of negligent bailment per se (which, as noted above, the Court will treat as a claim of general negligence per se). The Amended Complaint asserts these claims separately, and Plaintiffs' Response argues separately in support of each claim (albeit under a single caption of the Response). Doc. No. 26 at 8-12. Because the analyses for these respective claims are different, the Court will take the claims up separately herein.

*a. Negligent Bailment*[7]

Defendant contends that Plaintiffs' negligent bailment claim fails because Plaintiffs have not alleged that Defendant lost or damaged Plaintiffs' vehicles and has not alleged facts from which it could reasonably be inferred that Defendant lost or damaged Plaintiffs' vehicles. Doc. No. 20 at 3, 12. However, damage to Plaintiffs' vehicles is not necessary to establish a prima facie case of negligence.

"In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn.1995)).

Plaintiffs contend in their Response that they have alleged facts that plausibly suggest a valid claim of negligence. Doc. No. 26 at 8-12. The Court agrees. Plaintiffs allege that Defendant owed Plaintiffs a duty of care, established by local ordinance, to have removed the boots on their vehicles within one hour of Plaintiffs calling and requesting it to do so. Doc. No 14 at ¶¶ 7, 70. Plaintiffs allege that Defendant breached that duty by failing to remove the boots from Plaintiffs' vehicles within one hour. *Id*. at ¶¶ 8, 10, 71. Plaintiffs further allege that Plaintiffs lost the use and enjoyment of the vehicles due to Defendant's failure to remove the boots. *Id*. at ¶¶ 56, 72.

---

[7] Although Plaintiffs assert a claim for negligent bailment, their argument is based upon a general common law negligence theory. Accordingly, the Court will address Plaintiffs' claim as such, using case law on common law negligence, albeit as it applies to negligence with respect to bailment in particular.

Moreover, Plaintiffs allege that this loss would not have occurred but for Defendant's failure to remove the boots. And the Amended Complaint alleges proximate cause. The Court does not see why these allegations are not entitled to be treated as true for purposes of the instant motion to dismiss.

Accordingly, the Court finds that Plaintiffs have plausibly alleged a claim for common law negligence and will therefore deny Defendant's motion to dismiss this claim.

Defendant's argument to the contrary is without merit. Defendant bases its argument as to the negligent bailment claim on the assumption that what—under Tenn. Code Ann. § 24-5-111[8] and *Anderson v. Lamb's Auto Serv., Inc.* No. W2008-01305-COA-R3-CV, 2009 WL 1076729 (Tenn. Ct. App. March 5, 2009)—is required to establish a *prima facie* case of negligent bailment (including damage to the bailed property) is required to make out *any case* of negligence in connection with a bailment. Citing Tenn. Code Ann. § 24-5-111, *Anderson* notes that a plaintiff-bailor establishes a *prima facie* case of negligent bailment if it proves, among other things, that there was damage to the property. *Id.* at *4. *Anderson* further notes that if the plaintiff-bailor establishes a *prima facie* case in accordance with Tenn. Code Ann. § 24-5-111, then "the burden shifts to the bailee to produce evidence and persuade the trier of fact that the damage was not caused by the bailee's negligence." *Id.* In other words, the successful establishment of a prima facie

---

[8] That statute provides:

> In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee in good condition and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, provided the loss or damage was not due to the inherent nature of the property bailed.

Tenn. Code Ann. § 24-5-111.

case of negligent bailment raises a presumption of negligence that the bailor bears the burden of rebutting.

Obviously, shifting the burden of production and persuasion to the defendant-bailee would be a huge advantage for any plaintiff-bailor who chooses to try to, and successfully does, establish a *prima facie* case in accordance with Tenn. Code Ann. § 24-5-111. But that is not to say that a plaintiff-bailee *must* go this route, and *neither Anderson* nor Tenn. Code Ann. § 24-5-111 suggest that a plaintiff-bailee must seek to go this route. To the contrary, case law (old but still valid case law) is clear that a plaintiff-bailee alternatively can seek to prevail by proving negligence without the aid of the kind of burden-shifting (on the issue of negligence contemplated by *Anderson*, by establishing a general claim of negligence (in the bailment context). *See, e.g.*, *Steiner-Liff Iron & Metal Co. v. Woodmont Country Club*, 480 S.W.2d 533, 537 (Tenn. 1972) (clearly implying that a plaintiff-bailor can seek to prevail via "evidence of any specific act of negligence on the part of defendant's employee [or instead by] rel[ying] upon the presumption or inference of negligence which it insists arises pursuant to T.C.A. 24—515 [now Tenn. Code Ann. § 24-5-111]."); *Farrell-Calhoun Co., for Use of Auto. Ins. Co. of Hartford, Conn. v. Union Chevrolet Co.*, 113 S.W.2d 419, 420–21 (Tenn. Ct. App. 1937). *Cf. Hammond v. United States*, 173 F.2d 860, 863 (6th Cir. 1949) (noting that there is no presumption of negligence when goods are lost by fire and that the burden of establishing both the negligence and its causal connection with the loss rests upon the plaintiff, and suggesting that the plaintiff is not necessarily precluded from meeting that burden merely because it lacks the benefit of any presumption).

In their Amended Complaint, Plaintiffs do not mention, let alone rely on, an alleged ability to establish a *prima facie* case under Tenn. Code Ann. § 24-5-111 (so as to shift the burden to Defendant) under *Anderson*. Instead, Plaintiff alleges, with apparent invocation of a

straightforward common law negligence theory, that "[a]s a direct and proximate result of Nashville Booting's negligent failure to remove their booting devices by the conclusion of their involuntary/constructive bailment, Plaintiff and other members of the putative class were denied use and enjoyment of their vehicles and suffered other compensable damages." (Doc. No. 14 at ¶ 89). Both Tenn. Code Ann. § 24-5-111 and *Anderson* are inapplicable and irrelevant to the question here: whether Plaintiff thus has plausibly alleged a claim of negligence. Later on in this litigation, Plaintiffs conceivably could seek to invoke Tenn. Code Ann. § 24-5-111 to establish a *prima facie* case to shift the burden to Defendant in the manner suggested in *Anderson*, but at this juncture Plaintiffs need not do so.

The Court finds that Plaintiffs have pleaded factual matter sufficient to state a claim for negligence in the context of bailment. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> b. *Negligence per se*

Although Defendant has not addressed Plaintiffs' separately pleaded claim of negligent bailment per se, the Court nevertheless will address it, for two reasons. First, Defendant did address Plaintiffs' claim of negligent bailment, and Defendant can be forgiven for believing that it fully addressed that claim even without addressing Plaintiffs' claim of negligent bailment per se. Second, there actually is no such claim as negligent bailment per se as such, which makes it even more forgivable that Defendant did not address it separately. And third, the Court arguably could dismiss the claim as non-cognizable on the basis, so choosing to address the claim (as one for general negligence per se) may actually constitute an instance of erring on the side of Plaintiff.

The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se.[9] *Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994). "A claim for negligence per se has three elements: (1) a violation of a statutory or regulatory duty of care; (2) a showing that the statute or regulation was meant to benefit and protect the injured party; and (3) proximate cause."[10] *Steinberg v. Luedtke Trucking, Inc.*, No. 4:17-CV-9, 2018 WL 3233341, at *3 (E.D. Tenn. July 2, 2018) (citing *Chase, Jr. v. Physiotherapy Assocs., Inc.*, No. 02A01-9607-CV-00171, 1997 WL 572935, at *5 (Tenn. Ct. App. Sept. 5, 1997)).

Plaintiffs allege that "Nashville Booting's conduct was negligent per se because it violated Nashville Ordinance § 6.81.170(E)." Doc. No. 14 at 18. Nashville Ordinance § 6.81.170(E) generally provides that it is unlawful to fail to remove a boot within one hour after being contacted by the vehicle's owner. *See* § 6.81.170(E).

"When alleging a statute or regulation based negligence *per se* claim, it is not sufficient for a plaintiff to assume . . . that the alleged violation of a statute automatically supports a claim of negligence *per se.* Even if the plaintiffs are within the class to be protected by the statute, a

_____

[9] Although the case law here references a statutory violation, Tennessee case law has made clear that a plaintiff may also bring a claim of negligence per se based on a violation of a local ordinance. *See Whaley v. Perkins*, 197 S.W.3d 655, 673 (Tenn. 2006) ("While the discussion in *Cook* refers to violation of a statute, we note that other cases include violations of ordinances as a possible ground for application of the negligence per se doctrine.").

[10] These elements have been stated somewhat differently as follows: "the defendant: (1) violated a statute, ordinance, or regulation that requires or prohibits a particular act for the benefit of the plaintiff or the general public; (2) that the injured person was within the class of individuals the legislature intended to benefit and protect by enacting the statute, ordinance, or regulation; and (3) that the defendant's negligence was the proximate cause of the injured party's injury." *Abeyta v. HCA Health Servs. of Tn, Inc.,* No. M2011-02254-COA-R3CV, 2012 WL 5266321, at *10 (Tenn. Ct. App. Oct. 24, 2012). These elements, however, amount to the same effect as those stated above in a case like the instant one, where the Court can and does assume based on the allegations of the complaint that the plaintiffs are among the class of persons the regulation was intended to protect.

statutory negligence *per se* claim cannot stand unless the statute establishes a standard of care." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000).[11] "Where a statutory provision does not define a standard of care but merely imposes an administrative requirement, such as the requirement to obtain a license or to file a report to support a regulatory scheme, violation of such requirement will not support a negligence per se claim. Even if the regulatory scheme as a whole is designed to protect the public or to promote safety, the licensing duty itself is not a standard of care, but an administrative requirement. *Id.* (quoting *Talley v. Danek Medical, Inc.,* 179 F.3d 154, 159 (4th Cir. 1999)).

What this effectively means is that even if the plaintiff relies on a regulation that would satisfy *the second element* of negligence per se, a violation of such regulation does not satisfy the *first element* unless the regulation actually imposes *a duty of care*, as opposed to, for example, a mere administrative requirement. *See id.*; *United Inventory Servs., Inc. v. Tupperware Brands Corp.,* No. 08-1208, 2010 WL 1009978, at *4 (W.D. Tenn. Mar. 15, 2010) ("The statute relied upon must set forth a standard of care.") So, the plaintiff is required to show in effect that the regulation imposes upon the defendant a standard of care (the first element) towards a class of persons that includes the plaintiff (the second element). As for what constitutes a standard (or duty) of care, the Tennessee Supreme Court has noted:

> We have defined duty of care to be the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for protection against

---

[11] The Court realizes that in this diversity action, it is not bound by opinions from the Tennessee Court of Appeals. Instead, the Court is called upon to apply Tennessee law either as it clearly exists on the topic in question or as the Court believes it would be pronounced by the Tennessee Supreme Court were it to rule on the topic. *See Belcher v. Sears, Roebuck and Co.*, 686 F. Supp. 671, 672-73 (M.D. Tenn. 1988) (*"Under the Erie doctrine, this Court must determine and apply the law of Tennessee, and, if the state law has not been clearly delineated, this Court has the duty to determine, as best it can from the available sources, what the Tennessee Supreme Court would do if presented with the same issue."*). The Court is quite confident that on the instant topic, *King* states Tennessee law either as it is or as it would be found by the Tennessee Supreme Court.

unreasonable risks of harm. *McCall v. Wilder,* 913 S.W.2d at 153. The "imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *Bradshaw v. Daniel,* 854 S.W.2d at 870. "Indeed, it has been stated that 'duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Id.* (quoting W. Keeton, *Prosser and Keeton on the Law of Torts* § 53 at 358 (5th ed. 1984)); *accord Craig v. A.A.R. Realty Corp.,* 576 A.2d 688, 692 (Del.Sup.1989) (duty is "frequently an expression by the court of evolving public policy").

*McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894–95 (Tenn. 1996). Along the same lines, albeit more specifically with respect to negligence per se, the Tennessee Supreme Court has strongly indicated that something is a "standard of care" only to the extent that it is properly deemed a prescription of what may be expected of a reasonable person. *Cook By & Through Uithoven*, 878 S.W.2d at 937 ("The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se.").[12]

Here, the Court finds that Plaintiff has plausibly alleged the second element (and perhaps also the third element) of a claim for negligence per se. But Plaintiffs' negligence per se claim fails as a matter of law primarily because the Court cannot find that Nashville Ordinance § 6.81.170(E) prescribes a *duty of care* as prescribed by the first element.

---

[12] In *Cook*, the court went on to say that "'when a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate.'" *Id.* at 937 (quoting *Prosser and Keeton on Torts* § 36, p. 220 (5th ed. 1984)). This case indicates that a *statute* providing that particular acts be done *may* be interpreted as fixing a "standard of care." But it does not indicate that a *municipal ordinance* necessarily *must* be so interpreted. And the Court refuses to accept that the Tennessee Supreme Court would abdicate to municipal governing councils the role of prescribing standards of care to be applied in negligence claims (via negligence per se) to such an extent that any municipal ordinance that says that something must be or not be done becomes that standard governing negligence claims (predicated on a negligence per se theory).

This case is like *United Inventory Servs.*, in which the plaintiff premised a claim of negligence per se on alleged violations of the Tennessee Solid Waste Disposal Act (TSWDA), namely, the defendant's burial of solid waste on the Plaintiff's property without a permit. As the court there explained:

> The Plaintiff has referred the Court to no standard of care articulated in the statute. Nor has it cited to any case holding that the Act contains a standard of care. Rather, UIS insists that it is within the class of persons the Act was meant to protect and it is probably correct. However, such status does not somehow transform the legislation's registration and permit process, and the State's general supervision of disposal sites, from, in the Court's view, administrative requirements, into a standard of care. *See King,* 37 S.W.3d at 460, *supra.* Based on the Plaintiff's failure to establish that the Act encompasses a standard of care, its claim of negligence *per se* arising from a violation of the Act's provisions cannot stand.

*United Inventory Servs.*, 2010 WL 1009978, at *5. Similarly, Plaintiffs here have not referred the Court to any standard of care articulated in the Nashville ordinance on which Plaintiffs rely. Like the plaintiff in *United Inventory Servs.*, Plaintiffs have pointed to a *rule* intended to protect a class of persons that include Plaintiffs, but that is not enough. The ordinance (namely, its one-hour unbooting deadline) must set forth a standard of care, and this Court cannot conclude that such deadline is a creature of holistic societal concerns so as to constitute a standard of care. The deadline is a rule meant to protect people like Plaintiffs, but that does not mean that it represents anything close to comprehensive societal judgments about what protection people like Plaintiffs are entitled to against people like Defendants or how the hypothetical reasonable person would act were he or she in the booting business. The ordinance reflects that the one-hour deadline must be observed and that the one-hour deadline is appropriate in the view of those who passed the ordinance. But it has not been shown to reflect is that this is an expression of a "reasonable person" standard that should displace the more general "reasonable person" standard that would apply to Plaintiffs' negligence claim in the absence of a negligence per se theory. That is not to say that a

violation of the ordinance is not unlawful and thus entails some consequence(s); it is only to say that Plaintiffs have not alleged (or established in their briefing), and the Court cannot find on its own, that the ordinance prescribes a standard of care. Therefore, Defendant's motion to dismiss Plaintiffs' negligence per se claim will be granted.

(iii)    Alleged Conversion and Trespass to Chattels[13]

Defendant argues that the conversion and trespass to chattels claims both fail because there was only an unintended delay in the removal of the boots on Plaintiffs' vehicles, not an outright refusal to remove the boots. Doc. No. 20 at 13-15.

"Trespass to chattels and conversion are intentional torts involving interference with an owner's property rights." *Kauffman v. Forsythe*, No. E201902196COAR3CV, 2021 WL 2102910, at *4 (Tenn. Ct. App. May 25, 2021) (citing Restatement Second of Torts §§ 217, 222A)). "The difference between conversion and trespass to chattels 'is nearly always one of degree.'" *Id*. at *5 (citing Restatement Second of Torts § 222A. cmts. c, d). "A plaintiff may recover for trespass to chattels upon showing that another party 'intentionally use[d] or intermeddle[d] with [the plaintiff's] personal property . . . without authorization.'" *Id*. at *4 (citations omitted). "A successful conversion claim, on the other hand, requires proof that the defendant appropriated the plaintiff's tangible personal property for his or her own use and benefit by intentionally exercising dominion over the property in defiance of the plaintiff's rights." *Id*. (citations omitted).

Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Kinnard*

---

[13] Although Plaintiffs list conversion and trespass to chattels as two separate claims, Defendant's Motion discusses these claims in tandem. Much of Tennessee case law does likewise, and so does the Court herein.

*v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n*

*v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

> In order to establish conversion, the plaintiff must allege and prove facts showing a right to immediate possession of the property at the time of conversion. The plaintiff must also prove the commission of such acts by the defendant with respect to the allegedly converted property as amount to a repudiation of the plaintiff's title or an exercise of dominion over the property. . . . Where the circumstances do not amount to an actual conversion, [ ] the plaintiff must show a demand and refusal prior to the commencement of the action and that the defendant had the power to give up the property. . . . A wrongful intent on the part of the defendant is not an element of conversion and, therefore, need not be proved.

*PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387

S.W.3d 525, 554 (Tenn. Ct. App. 2012) (quoting 90 C.J.S. *Trover and Conversion* §88 (2012)).

Here, Plaintiffs allege that Defendant "deliberately continued to exercise dominion over

[Plaintiffs'] vehicles . . . and prevented . . . [their] use and enjoyment of their vehicles" by failing

to remove booting devices within one hour after being contacted by the vehicle owner as required

by local ordinance. Doc. No. 14 at 3, 19. Defendant relies on *PNC Multifamily Cap. Institutional*

*Fund XXVI Ltd. P'ship* standing for the proposition that where circumstances do not amount to

actual conversion, a plaintiff must show a demand and refusal prior to the commencement of the

action. *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 554.

This survival of this claim depends on whether, based on the allegations of the Amended

Complaint, a reasonable jury could view Defendant's failure to remove the boots within one hour

of the vehicle owners' demands as a refusal to return the vehicles. While Defendant contends that

a delay does not necessarily amount to a refusal, Plaintiffs contend that Defendant's "failure to

unboot Plaintiffs' vehicles within one hour of their demand to do so constituted a refusal." Doc.

No. 26 at 3.

*First Nat. Bank v. Barbee* provides guidance here. 150 Tenn. 355, 265 S.W. 371 (1924). In this case, the Tennessee Supreme Court held that a bank's failure to immediately return property upon demand was a refusal because the bank took no steps to comply with the demand. *Id*. at 374. Two relevant issues in this matter were whether Bank A refused to deliver warehouses receipts to Bank B after demand was made, and whether Bank A tendered the receipts to Bank B within a reasonable time after demand. *Id*. In evaluating whether the failure to deliver the receipts was a refusal, the court noted that "[i]t is true that [Bank A's cashier] does make the statement that he did not 'refuse to deliver them.' However, it is evident that this is a deduction, or construction, of his own. We agree with the chancellor that his admitted conduct was equivalent to a refusal, and his admission that he took no steps at the time to comply with the demand is, we think, conclusive, and that there was thus no controverted question of fact on these issues." *Id*. The court further noted that "[Bank A] agreed to hold in trust the warehouse receipts covering th[e] cotton for the use of the [Bank B]; that [Bank B] demanded the receipts from [Bank A] and that this demand was in legal effect refused, and that thereafter no proper effort was made by [Bank A] to deliver the[ ] receipts pursuant to its trust obligation—establishes a case of conversion, under the authorities." *Id*.

Allegedly, upon receiving calls to remove the boots from Plaintiffs' vehicles, Defendant did not act with urgency, taking longer than the one-hour legal limit to remove the boots and taking up to eight hours in a particular Plaintiff's situation. *See* Doc. No. 14 at ¶ 55. Here, Plaintiffs have plausibly alleged an unlawful delay in the removal of boots from their vehicles. And from the factual matter that is alleged here, it is easily inferable that Defendant knew that such delay would ultimately occur or was at least reckless as to the ultimate occurrence of such delay. Under the principles articulated in *First Nat. Bank,* this alleged knowing (or at the very least reckless) delay

could be found by a jury to constitute a refusal for purposes of the requirements of a conversion claim; certainly the Court cannot find that an alleged knowing or reckless delay in returning property as a matter of law does not constitute the required refusal of the demand for return of the property. So in this Court's view, Plaintiffs have plausibly alleged this aspect of a conversion claim. Accordingly, as Defendant has made no other argument as to why a conversion claim has been inadequately stated, Defendant's motion to dismiss Plaintiffs' conversion claim is denied.

The Complaint also states a plausible claim for trespass to chattels. Here, Plaintiff alleges that Defendant's "interference with Plaintiffs['] . . . use of their vehicles was only privileged for a limited duration of time, and that privilege expired one hour after Plaintiffs . . . called [Defendant] to have the boots removed." Doc. No. 14 at 21.

> Tennessee case law on the tort of trespass to chattels is virtually nonexistent. However, Section 217 of the Restatement 2nd of Torts says that a trespass to chattel "may be committed by intentionally dispossessing another of the chattel, or using or intermeddling with a chattel in the possession of another." A person who commits a trespass to chattel may be liable to the possessor of (or to someone who may become entitled to possess) the chattel if: (a) the chattel is impaired as to its condition, quality, or value, or (b) the possessor is deprived of the use of the chattel for a substantial time, or (c) the trespass causes bodily harm to the possessor or to some person or thing in which he has a legally protected interest. Restatement (Second) of Torts, §§ 218–220 (1965). "Though not amounting to conversion, the defendant's interference must, to be actionable, have caused some injury to the chattel or to the plaintiff's rights in it." *Jamgotchian v. Slender,* 170 Cal. App. 4th 1384, 89 Cal. Rptr. 3d 122, 134 (2009). Said differently, "one who intentionally interferes with another's chattel is liable only if there [sic] results in harm to 'the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time.'" *School of Visual Arts v. Kuprewicz,* 3 Misc.3d 278, 771 N.Y.S.2d 804, 807–08 (N.Y. Sup. Ct. 2003) (quoting Restatement (Second) of Torts, § 218 cmt. e (1965)).

*Holt v. Macy's Retail Holdings, Inc.*, 719 F. Supp. 2d 903, 914 (W.D. Tenn. 2010). Plaintiffs' allegation that Defendant deprived them of the use of their vehicle for a substantial amount of time, here longer than one hour (in violation of a local ordinance) and in one case more than eight

hours, suffices to state a plausible claim for relief for trespass to chattels. *See* Doc. No. 14 at ¶ 55. Therefore, although both parties agree that Defendant initially had authority to boot Plaintiffs' vehicles, Defendant's alleged failure to timely remove the boots as required by ordinance suffices to constitute the required alleged interference (or "intermeddlement") with Plaintiffs' vehicles and alleged deprivation of Plaintiffs' use of their vehicles for a substantial time. Accordingly, the Court will deny Defendant's motion to dismiss Plaintiffs' trespass to chattels claim.

### (iv) Alleged Compensatory Damages

As an alternative basis to avoid the above-referenced denial of the Motion with respect to Plaintiffs' claim for negligence, conversion, and trespass to chattels, Defendant contends that "Plaintiffs have referenced only three types of direct, subsequent damages: (1) an alleged loss of use of their respective vehicles; (2) wasted time; and (3) frustration" and that none of those damages are compensable. Doc. No. 20 at 15.

Plaintiffs' Amended Complaint alleges compensable damages as to their negligent bailment and conversion claims in the form of denial of the "use and enjoyment of their vehicles"[14] Doc. No. 14 at ¶¶ 89, 101. Likewise, as to Plaintiffs' trespass to chattels claim, Plaintiffs allege deprivation of the "use and enjoyment of their vehicles," albeit without here specifically identifying (in redundant fashion) such deprivation as a form of compensable damages. *Id.* at ¶ 108. Although Plaintiffs' Response attempts to add on allegations of damages for "the inconvenience, frustration, and loss of enjoyment of life," damages of this nature were not alleged

---

[14] Plaintiffs do not allege compensable damages specifically as to their negligent bailment per se claim, but that is irrelevant here as the Court has dismissed that count pursuant to this Memorandum Opinion and its accompanying order.

in Plaintiffs' Amended Complaint and so the Court will disregard them in determining whether any of Plaintiffs' claims fail due to insufficient allegations of compensable damages.[15]

Based on Defendant's Memorandum in Support, Plaintiffs apparently (and understandably) construed Defendant's argument here to be that Plaintiffs' claimed compensatory damages as a matter of law could not be awarded. In its Reply, however, Defendant noted that it does not dispute that under certain circumstances, damages from loss of use of a vehicle are awardable under Tennessee law. (Doc. No. 28 at 5-6).[16] Thus, Defendant indicates that it does not challenge the

---

[15] The Amended Complaint does refer once to "waiting in frustration" and once to being "incredibly frustrated" by having to wait. (Doc. No. 14 at ¶¶ 57, 69). But the Court cannot find that this constitutes a sufficient allegation of *damages* stemming from "frustration," even if "frustration"-based damages were cognizable, which (as Defendant notes) is something that Plaintiffs do not establish. Compensatory damages are available for "loss of enjoyment of life." *See Meals ex rel. Meals v. Ford Motor Co*., 417 S.W.3d 414, 420 (Tenn. 2013) ("Non-economic damages include pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life."). But that is irrelevant here because Plaintiffs did not plead such damages in their Amended Complaint. (The Court wonders, but need not decide, whether that is because it seems a bit overwrought to suggest that deprivation of the use of a vehicle for a number of hours is so consequential as to result in the owner losing "enjoyment of life.") Accordingly, for purposes of the instant Motion, the Court will disregard Plaintiffs' claim for such damages claimed for the first time in the Response. Doc. No. 26 at 15-17.

[16] The court concludes that any such dispute would have been meritless. Under Tennessee law, "it is clear that a plaintiff may recover for the loss of use of a chattel under a theory of negligence[.]"*Corporate Air Fleet of Tennessee, Inc. V. Gates Learjet, Inc.*, 589 F. Supp. 1076, 1081 (M.D. Tenn. 1984) (concluding that the "plaintiffs may pursue their remedy for the loss of use of the aircraft under a theory of negligence[.]"); *see also Level 3 Communications, LLC v. Floyd*, 764 F. Supp. 2d 945, 956 (M.D. Tenn. 2011) (recognizing in a trespass and negligence action that "the jury should be free to consider 'loss of use' in making its damage determination in this case."); *id.* ("[I]t is important to take an expansive view of the concepts of 'renting' or replacing capacity during a period of loss or injury. These courts recognize that a proactive business owner who takes care to ensure that the loss of the primary chattel will not result in a service disruption to customers should be entitled to the loss-of-use damages to which less proactive business owners are, unquestionably, entitled.").

From this, it appears that damages resulting from loss of use of property are awardable under certain circumstances under a theory of negligence, conversion, or trespass to chattels. Whether proof at trial ultimately would show those circumstances to exist  in the present case is another question, one the Court need not reach at this time.

potential *awardability* of such damages, but rather the adequacy of Plaintiffs' *pleading* of them. Specifically, quoting (with emphasis added and with problematic ellipses) *Scott v. Houston*, No. E200901118COAR3CV, 2010 WL 680984, at *7 (Tenn. Ct. App. Feb. 26, 2010), Defendant argues that such damages must be "*pleaded* . . . with reasonable certainty," and, quoting *Parker v. Clayton*, No. M2017-02556-COA-R3-CV, 2019 WL 4273913, at *9 (Tenn. Ct. App. July 10, 2019), Defendant argues that consequential damages in conversion cases are not recoverable if they are remote or uncertain or could have been avoided by the exercise of ordinary diligence. Doc. No. 28. at 6. According to Defendant, therefore, Plaintiffs' claims are subject to dismissal alternatively because Plaintiff has not "asserted[ed] a loss of use  . . . with reasonable certainty." *Id*.

There are a number of problems with Defendant's argument. To begin with, it is not geared in its particulars towards federal pleading standards as establish by *Iqbal* and *Twombly*. Defendant does cite the well-established principles from *Iqbal* and *Twombly* that mere labels and conclusions, and a formulaic recitation of the elements, will not suffice by themselves and need to be supported by factual matter. But Defendant does not really explain why the factual matter from the Amended Complaint—which asserts *fact*s concerning the temporary loss of use of vehicles from which, as discussed below, out-of-pocket losses (at the very least) are inferable—is not sufficient.

Relatedly, with respect to the sufficiency of allegations of damages in particular, Defendant relies not on federal cases or principles, but rather on state cases. But obviously the Amended Complaint is subject to federal, not state, pleading standards. And Defendant means to suggest that this Court should deem Tennessee state cases persuasive because Tennessee pleading standards (which, it is true, have some similarity with federal pleading standards) are sufficiently similar in

all material respects, it has not endeavored to support such suggestion. For this reason alone, Defendant's citation to *Scott* is unpersuasive.

In any event, the Court is far from convinced that *Scott*, especially as it has been represented by Defendant, accurately states Tennessee law. Defendant quotes *Scott* for the proposition that loss-of-use damages must be *pleaded* (as opposed to proven) with reasonable certainty. But what *Scott* actually said is that damages for loss of use in some cases can be awarded "where it is pleaded and proven with reasonable certainty." *Scott*, 2010 WL 680984, at *7. The Court is far from convinced that what *Scott* meant is what Defendant, via its use of ellipses, has suggested it meant— that under Tennessee law such damages for loss of use can in some cases be awarded "where it is pleaded *with reasonable certainty* and proven with reasonable certainty." The Court suspects that *Scott* may have intended "with reasonable certainty" to modify only "proven," and not "pleaded"; this would be consistent with its subsequent discussion, which focused on losses being *proven* with reasonable certainty. And to the extent that the court in *Scott* did mean that "reasonable certainty" is required at the pleading stage—where state (like federal) standards are less stringent than at the dispositive *proof* stage[17]—the Court is not satisfied, based on this single unpublished opinion, that the Tennessee Supreme Court would adopt this approach. [18]

---

[17] *See, e.g.*, *Daugherty v. Sony Elecs., Inc.*, No. E2004-02627-COA-R3-CV, 2006 WL 197090, at *7 (Tenn. Ct. App. Jan. 26, 2006) ("What must be remembered is that whether Plaintiff ultimately can prove this claim is not the issue now before us. At this motion to dismiss stage of the proceedings, we are only reviewing the complaint to determine whether it states a cause of action[.]").

[18] As the Sixth Circuit has explained:

In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. "Relevant data include decisions of the state appellate courts, and

Defendant's invocation of *Parker* is similarly unpersuasive. Like *Scott*, *Parker* likewise does not govern pleading standards in federal court. And although *Parker* does indicate that special damages must be pleaded, it does not indicate that they must be pleaded with "certainty." Instead, it states that they must be *proved* with reasonable certainty. Along the same lines, although *Parker* states that recovery is unavailable for losses that the plaintiff could have avoided by exercising ordinary diligence, it does not indicate that the plaintiff must *plead* that claimed losses could not have been so avoided. And indeed, any such rule would be arguably misguided, as it would require a plaintiff either to try to get by with making just the kind of boilerplate incantation (such as "these losses could not have been avoided by the exercise of ordinary diligence) that Defendant notes is insufficient or to plead facts proving this negative, which seems unduly burdensome to the plaintiff and not particularly helpful to the defendant in understanding what it is supposedly liable for, and why.

Turning to the federal principles that govern here, the Court believes that Sixth Circuit case law does not recognize stringent pleading requirements with respect to damages. For example, in *Marais v. Chase Home Finance LLC*, 736 F.3d 711 (6th Cir. 2013), the Sixth Circuit addressed the defendant's argument (on a motion for judgment on the pleadings under Rule 12(c))[19] that the plaintiff had failed to allege any damages purportedly flowing from the defendant's alleged violation of the Real Estate Settlement and Procedures Act  (RESPA) underlying two of the

---

those decisions should not be disregarded unless we are presented with persuasive data that the [applicable state's] Supreme Court would decide otherwise."

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citation omitted) *(*quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir. 1995)).

[19] A ruling on a motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion. *E.g.*, *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001).

plaintiff's claims. The district court agreed, dismissing those claims on causation grounds, concluding that the plaintiff did not allege a sufficient link between the alleged actual damages and the defendant's alleged violation of RESPA. *Id.* at 720. The Sixth Circuit reversed, in part because "the district court was obliged to view the facts alleged and inferences therefrom in [the plaintiff]'s favor." *Id.* at 721. What the Sixth Circuit said there regarding the purported lack of allegation of *causation* of damages applies also to the purported lack of allegation of the *existence* of damages; the Court at this stage must draw inferences in Plaintiffs' favor, and the Court, from the factual allegation that Plaintiffs were temporarily denied use of their vehicle, can draw the inference that Plaintiffs were damaged by such loss of use.

In addition, the Court perceives that Sixth Circuit case law strongly suggests that allegations of damages can be quite general and yet still satisfy the *Iqbal/Twombly* standard. *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424-25 (finding that the plaintiffs "met this standard" by alleging in their complaint that the defendant violated the RESPA and "furthermore alleged 'damages in an amount not yet ascertained, to be proven at trial.'").[20] This Court has done likewise. For example, in *Smith v. Bank of Am., N.A.*, No. 3-13-0117, 2013 WL 2139911 (M.D. Tenn. May 15, 2013)

> Defendant also argues that Plaintiff has not sufficiently alleged injury or damages from Defendant's alleged misconduct [in foreclosing on Plaintiff's house]. Plaintiff's Third Amended Complaint alleges that Plaintiff incurred

---

[20] The Court grants that other circuits may be less lenient. *See*, *e.g.*, *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 551 (10th Cir. 2015) (affirming dismissal of Lanham Act claims because "Plaintiffs' assertion of damages is merely a 'formulaic recitation' of the damages element of their Lanham Act claim and their bald allegations are insufficient."); *Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 806 (8th Cir. 2013) (finding insufficient the appellants' counterclaim's "conclusory statement that '[a]s a direct and proximate result of Farm Credit's foregoing breaches, [appellants] were damaged.'"). But of course this Court must follow Sixth Circuit precedent as the Court construes it. And notably, a case like *Farm Credit Servs.* is in any event distinguishable from the present case, wherein Plaintiffs' have at least alleged damages of a particular *nature*: loss of use of their vehicles.

damages from the loss of his home and property because of his inability to stop the foreclosure sale or otherwise to protect his property interest. The question here is not whether Plaintiff can prove any damages, but whether he has sufficiently alleged damages. The Court finds that he has.

*Id.* at *4. In such cases, the allegations of damages are general indeed, and not supported by much factual matter, and yet still have been found sufficient. Likewise, although here Plaintiffs' allegations of damages are not supported by much factual matter, Plaintiffs have alleged damages of a particular nature (loss of use of vehicles), and the allegation is plausible—because, for example, it is easily inferable that someone stuck away from home could be forced, as a result of the denial of the use of his or her vehicle, to procure more costly transportation (for example, ride-share services).[21] At trial, such damages conceivably could prove at trial to be minimal or even non-exist at all. But, as noted in *Smith*, whether Plaintiff can prove any damages (minimal or otherwise) is not at issue at the pleading stage.

## **CONCLUSION**

With respect to two of Plaintiffs' five counts, Defendant is entitled to dismissal. As to the other three counts, Defendant presents arguments that conceivably could gain traction before a jury but do not persuade the Court that Plaintiff has failed to state a claim under the applicable pleadings standards.

Thus, and for the reasons discussed herein, the Court will grant the Motion in part and deny it in part. The Motion will be granted as to Count V (§ 1983 violations) and Count II (negligence per se). The Motion will be denied as to Count I (negligent bailment), Count III (conversion), and Count IV (trespass to chattels).

---

[21] It is an unexceptional proposition that someone needing transportation may need to pay out-of-pocket to get it.

An appropriate order will be entered.

ELI  RICHARDSON
UNITED STATES DISTRICT JUDGE