IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANTHONY LADD et al.,                )
                                    )
      Plaintiffs,                   )
                                    )            NO. 3:20-cv-00626
v.                                  )            JUDGE RICHARDSON
                                    )
NASHVILLE BOOTING, LLC,             )
                                    )
      Defendant.                    )
                                    )

**MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' motion to certify the proposed class. (Doc. No. 56, "Motion"). Defendant filed a response. (Doc. No. 65). Plaintiffs filed a reply.[1] (Doc. No. 74, "Reply"). For the reasons stated herein, the motion will be granted in part and denied in part.

BACKGROUND

During the relevant time period, § 6.81.170(E) of the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Ordinance")[2] stated that it was "prohibited and unlawful" for a booting service "[t]o fail to remove the boot within one hour of being contacted by the owner or operator of the vehicle that has been booted."[3] (Doc. No. 1-1 at

---

[1] Hereinafter, "Plaintiffs" refers to named Plaintiffs individually and on behalf of the putative class members.

[2] Based on a web site purportedly setting forth the March 24, 2023 version of the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee, it appears to the Court that this provision is now be codified in subsection (C) of § 6.81.170. https://library.municode.com/tn/metro_government_of_nashville_and_davidson_county/codes/code_of_o rdinances?nodeId=CD_TIT6BULIRE_DIVIGERE_CH6.81BOSE_ARTIVEQOP_6.81.170PRAC. However, the parties appear to be in agreement that during the relevant time, it was codified in subsection (E) of that code section.

[3] The Ordinance defines "booting" as the "attachment of any device to a vehicle that prevents the vehicle from being driven." (Doc. No. 1-1 at 2).

12). Plaintiffs and the putative class members are individuals who allege that Defendant violated the Ordinance when it failed to remove boots it placed on vehicles within an hour of a request to do so. Specifically, Plaintiffs seek to certify the following class:

> All persons who had a vehicle in their possession immobilized by Nashville Booting LLC in Nashville for longer than one hour after requesting removal of the immobilization device, from July 20, 2017 until June 17, 2022, but excluding the claims of non-named parties arising before December 1, 2018 (for whom Nashville Booting does not have any records).

(Doc. No. 56 at 4) (internal footnotes omitted).[4] Plaintiffs claim that Defendant is liable for negligent bailment,[5] trespass to chattel, and conversion.

Named Plaintiffs Anthony Ladd and Nicholas Brindle are two individuals who had their vehicles booted by Defendant and had to wait for more than an hour (from the time removal was requested) for Defendant to remove the boots on their respective vehicles.[6] (Doc. No. 56 at 8–15). Plaintiffs seek punitive and compensatory damages. (Doc. No. 1). As for compensatory damages, Plaintiffs seek economic damages for being deprived of the use and enjoyment of their vehicles and non-economic damages for the inconvenience of having to wait over an hour from the time of their respective requests to have the boots removed. (Doc. No. 56).

---

[4] As reflected by the parties' briefs, the "immobilization device" referred to in the class definition is a boot that is placed on the tire of a vehicle to stop the vehicle from operating. Therefore, the putative class consists of individuals who had a boot placed on a vehicle in their possession by Defendant and who had to wait over an hour to have the boot removed from the time of a request to have it removed. (Doc. No. 56 at 4).

[5] Hereinafter, the Court refers to Plaintiffs' negligent bailment claim as a "negligence" claim, which is consistent with how the parties refer to this claim in their briefs. This despite the Court's recognition that the elements of a negligent bailment claim vary slightly from the elements of a traditional negligence claim (*i.e.* a claim of simple negligence).

[6] Defendant does not appear to dispute that the named Plaintiffs waited more than hour to have the boots on their vehicles removed, and therefore the Court treats this fact as true for the purposes of class certification.

Via the Motion, Plaintiffs have moved the Court to certify the putative class under Rule 23(b)(3).[7] (Do. No. 56 at 2). Defendant filed a response (Doc. No. 65), and Plaintiffs filed a reply (Doc. No. 74). The Motion is thus now ripe for review.

## LEGAL STANDARD

The principal purpose of class actions is to achieve efficiency and economy of litigation, with respect to both the parties and the courts. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 159 (1982). As an exception to the usual rule that litigation is conducted by and on behalf of individually named parties, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). District courts have broad discretion in deciding whether to certify a class but must exercise that discretion within the framework of Rule 23. *See Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). However, "when in doubt as to whether to certify a class action, the district court should err in favor of allowing a class." *Rankin v. Rots,* 220 F.R.D. 511, 517 (E.D. Mich. 2004) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)).

A class action will be certified only if, after rigorous analysis, the court is satisfied that the prerequisites of Fed. R. Civ. P. 23(a) have been met and that the action falls within one of the categories prescribed in Fed. R. Civ. P. 23(b). *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). A party seeking to maintain a class action must be prepared to show that Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements have been met. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013). In addition, the party must satisfy, through evidentiary proof, at least one of Rule 23(b)'s provisions. *Id.* at 34. Where,

---

[7] In their Reply Plaintiffs have abandoned their request (made in the Motion) for certification under Rule 23(b)(2). (Doc. No. 74).

as here, the plaintiff relies on Rule 23(b)(3) in particular, the court can certify a Rule 23(a)-compliant class if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

In determining whether a plaintiff has met his or her burden, a court cannot rely merely on the designation of an action as a class action in the pleadings. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Instead, before certifying a class, a district court must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *Id.* at 161. As touched on above, in evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings,"[8] as the issues concerning whether it is appropriate to certify a class are often "enmeshed" within the legal and factual considerations raised by the litigation. *Gen. Tel. Co. of the Southwest*, 457 U.S. at 160; *see also In re Am. Med. Sys.*, 75 F.3d at 1079. It follows that the Court may rely on affidavits or declarations submitted in support of the Class Certification Motion. *See, e.g.*, *Steward v. Janek*, 315 F.R.D. 472, 477 (W.D.

---

[8] The Sixth Circuit, citing the Seventh Circuit, recently offered examples of when it is necessary to probe behind the pleadings to determine whether the requirements of Rule 23 have been satisfied. "What if a plaintiff alleges that the class consists of 10,000 members, but a defendant claims it includes 10?" *Doster v. Kendall*, 54 F.4th 398, 432 (6th Cir. 2022) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (Easterbrook, J.)). "The plaintiff must offer proof." *See id.* And when a plaintiff relies on a fraud-on-the-market theory, it "must prove (not [merely] plead) most of the elements of this factual theory to satisfy Rule 23(b)(3)." *Id.*

Tex. 2016) (declining to exclude declarations submitted in support of motion to certify class); *Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2017 WL 10592138, (S.D. Cal. Apr. 6, 2017). *Cf. Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 865 (S.D. Iowa 2018) ("Signed declarations or affidavits provide appropriate support for motions to conditionally certify a class" (involving a proposed collective action under the Fair Labor Standards Act)). Likewise, the Court can consider deposition testimony. *See*, *e.g.*, *Crutchfield v. Sewerage & Water Bd. of New Orleans*, No. CIV.A. 13-4801, 2015 WL 3917657, at *5 (E.D. La. June 25, 2015) (declining to strike plaintiffs' deposition testimony submitted in support of motion for class certification even though unpersuasive and self-serving at best), *aff'd and remanded*, 829 F.3d 370 (5th Cir. 2016).

The certification stage, however, is not the appropriate time for the Court to "engage in free-ranging merits inquiries[.]" *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* It is clear that over the years, many courts (including this one and others in this Circuit) have stated that the court generally must accept as true the allegations (at least those related to the merits) contained in the plaintiff's complaint. *See, e.g.*, *Porcell v. Lincoln Wood Prod., Inc.*, 713 F. Supp. 2d 1305, 1309 (D.N.M. 2010); *Moreno–Espinosa v. J & J Ag Prods., Inc.*, 247 F.R.D. 686, 691 (S.D. Fla. 2007) (citing *Heffner v. Blue Cross and Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006)); *Rankin*, 220 F.R.D. at 517; *Edwards v. McCormick*, 196 F.R.D. 487, 490 (S.D. Ohio 2000). But such statements have not accurately reflected the law in the Sixth Circuit as it has existed for more than a decade. As the Sixth Circuit explained in 2012, allegations in the complaint (including allegations related to the merits and not directly to class certification) should not be accepted as true *unless they are undisputed*:

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal–Mart* [*Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). "[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable," *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982), and must be checked through "rigorous analysis," *Wal–Mart,* 131 S. Ct. at 2551 (quoting *Falcon,* 457 U.S. at 161, 102 S. Ct. 2364). Some circuits expressly bar district courts from presuming that the plaintiffs' allegations in the complaint are "true for purposes of the class motion ... without resolving factual and legal issues that strongly influence the wisdom of class treatment." *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 675 (7th Cir.), *cert. denied,* 534 U.S. 951, 122 S. Ct. 348, 151 L.Ed.2d 263 (2001) (internal quotation marks omitted); *see also Elizabeth M. v. Montenez,* 458 F.3d 779, 783 (8th Cir. 2006); *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.),* 471 F.3d 24, 41 (2d Cir. 2006). That approach follows from *Falcon,* and *Wal–Mart* has cemented its propriety. Nevertheless it does not apply in all circumstances; it is not always " 'necessary ... to probe behind the pleadings before coming to rest on the certification question,' " *Wal–Mart,* 131 S. Ct. at 2551 (quoting *Falcon,* 457 U.S. at 160, 102 S. Ct. 2364), because sometimes there may be no disputed "factual and legal issues" that "*strongly influence the wisdom of class treatment,*" *Szabo,* 249 F.3d at 675.

*Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012). Explaining the rationale for not accepting the allegations of the complaint as true for purposes of class certification, the Seventh Circuit wrote in *Szabo*:

> The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it. The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later—by a motion for summary judgment under Rule 56, and if necessary by trial. By contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23. This would be plain enough if, for example, the plaintiff alleged that the class had 10,000 members, making it too numerous to allow joinder, see Rule 23(a)(1), while the defendant insisted that the class contained only 10 members. A judge would not and could not accept the plaintiff's assertion as conclusive; instead the judge would receive evidence (if only by affidavit) and resolve the disputes before deciding whether to certify the class. What is true of disputes under Rule 23(a)(1) is equally true of disputes under Rule

23(b)(3).

. . .

Questions such as these require the exercise of judgment and the application of sound discretion; they differ in kind from legal rulings under Rule 12(b)(6). And if some of the considerations under Rule 23(b)(3), such as "the difficulties likely to be encountered in the management of a class action", overlap the merits—as they do in this case, where it is not possible to evaluate impending difficulties without making a choice of law, and not possible to make a sound choice of law without deciding whether Bridgeport authorized or ratified the dealers' representations—then the judge must make a preliminary inquiry into the merits.

Courts make similar inquiries routinely under Rule 12(b)(1) and 12(b)(2) before deciding whether they possess jurisdiction over the subject matter of the case and the persons of the defendants, the location of the proper venue, application of *forum non conveniens*, and other preliminary issues. Often personal jurisdiction is closely linked to the nature, and merit, of the claim being asserted, see, e.g., *Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir.2000), but this does not mean that the judge will just take the plaintiff's word about what happened. Nor will the court accept the plaintiff's say-so when deciding how much could be recovered (and thus whether the amount in controversy for diversity jurisdiction is present), even though the maximum recovery depends strongly on the merits. See, e.g., *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350 (7th Cir.1995). When jurisdiction or venue depends on contested facts—even facts closely linked to the merits of the claim—the district judge is free to hold a hearing and resolve the dispute before allowing the case to proceed. A motion under Rule 12(b)(6) is unique in requiring the district judge to accept the plaintiff's allegations; we see no reason to extend that approach to Rule 23, when it does not govern even the other motions authorized by Rule 12(b).
. . .

Plaintiffs cannot tie the judge's hands by making allegations relevant to both the merits and class certification. . . .


Certifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys—who may use it in ways injurious to other class members, as well as ways injurious to defendants. Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations.

*Szabo*, 249 F.3d 672,675–77 (7th Cir. 2001). So under *Szabo*, allegations in the complaint—even if related primarily to the merits (and indirectly to class certification)—are not

to be taken as true for purposes of class certification. As *Gooch* indicates, *Szabo's* approach is now the Sixth Circuit's approach, although the Sixth Circuit is careful to note in effect that there is no need to probe behind the pleadings to the extent that those factual allegations are undisputed . *See Gooch,* 672 F.3d at 417; *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) ("*Dukes* [*i.e.*, *Walmart*] verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues [unless there are no undisputed relevant factual or legal issues]." (citing *Gooch*, 672 F.3d at 417)).

So to the extent that relevant allegations in the pleadings are not undisputed, a court must probe behind the pleadings, and therefore must rely on information outside of the complaint to support any decision to certify a class. This rule squares with the principle that courts, although directed to refrain from engaging directly in analyses on the merits at the class certification stage, must conduct a rigorous analysis as to the fulfillment of the Rule 23 requirements.

Therefore, "if there are material factual disputes, the court must receive evidence and resolve the disputes before deciding whether to certify the class." *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (citation, alterations, and internal quotation marks omitted). As indicated in multiple places above, the factual issues related to resolution of the Rule 23 inquiry may, to an extent, overlap with issues related to the merits, but the court is to resolve only the Rule 23 issues, and not the merits issues. *See, e.g.*, *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 453 (S.D.N.Y. 2013) (citing *Wal–Mart Stores v. Dukes*, 564 U.S. 338 (2011) and *Amgen*). In deciding whether Rule 23's requirements for certification have been met, a district court may draw reasonable inferences from the facts before it. *Rankin*, 220 F.R.D. at 517 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 520 (6th Cir.1976)).

<u>DISCUSSION</u>

As suggested above, Federal Rule of Civil Procedure 23(a) provides in pertinent part that a plaintiff (or multiple plaintiffs) may sue in a representative capacity on behalf of members of a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative [plaintiff(s)] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Even if the parties do not dispute issues relating to the requirements of Rule 23(a), the district court must nonetheless conduct a "rigorous analysis" of such requirements. *See In re Tivity Health*, No. 22-0502, 2022 WL 17243323, at *1 (6th Cir. Nov. 21, 2022). In addition, as discussed below, courts have inferred from Rule 23(a) a requirement that members of the proposed class be ascertainable.

1. <u>Federal Rule of Civil Procedure 23(a)</u>

    A. <u>**Numerosity**</u>

Class certification requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1) "While there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 237 (N.D. Ohio 2014) (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)) (internal quotation marks omitted). "[A]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

Plaintiffs estimate the class size to contain between 1,850 to 3,700 members. (Doc. No. 56 at 18 (citing Doc. No. 68)). In support of this estimation, Plaintiffs have submitted a declaration

by Mark Hammervold, one of the attorneys representing Plaintiffs in this action. (Doc. No. 68). In the declaration, Hammervold explains that based on documents produced during discovery, he estimates that Defendant booted approximately 37,000 vehicles during the Class Period, and that between 5 percent and 10 percent of that (estimated) 37,000 vehicles were not unbooted within one hour of a request to do so. (Doc. No. at 68 at 2). Plaintiffs also provided a list of one hundred sample putative class members (*i.e.* individuals Plaintiffs expected to fall within the proposed class). (Doc. No. 68 at 12). Though Defendant disagrees that the class size is this large, it nonetheless agrees that a class of this size meets the numerosity requirement. (Doc. No. 65 at 14–15). Based on Hammervold's declaration and the sample list of one-hundred class members, the Court finds Plaintiffs have put forth sufficient evidence to demonstrate that joinder is impractical. Therefore, the numerosity requirement under Rule 23 is met.

### B. <u>Commonality</u>

Class certification requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "A single factual issue can suffice. [] Commonality is a low hurdle." *See Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1 (D. Mass. 2010) (internal quotations marks omitted). To satisfy this requirement of commonality, the plaintiff(s) must show that class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. What matters to class certification is not the *raising of common questions*, but the capacity of a class-wide proceeding to *generate common answers* apt to drive the resolution of the litigation. *Id.* The mere fact that after the common questions as to the defendant's liability have been resolved, questions

peculiar to each individual member of the class remain does not mean that a class action is impermissible. *See Young*, 693 F.3d at 543 (6th Cir. 2012) (holding that presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct). "The same principle holds true for individual defenses—though they may affect different class members differently, their existence does not compel a finding that individual issues predominate over common ones." *See Johnson v. Nextel Communications, Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (internal quotation marks omitted).

Plaintiffs assert that there are common questions of law and fact to the class that fulfill the commonality requirement. As examples of these questions, Plaintiffs provide the following:

> (i) whether Nashville Booting's failure to unboot their vehicles within one hour [sic] the booting request was negligent; (ii) whether Nashville Booting's failure to unboot their vehicles within one hour of the request constitutes trespass to chattels or conversion; (iii) whether Plaintiffs and class members suffered compensable damages, including loss of use and enjoyment of their vehicles and inconvenience damages, due Nashville Booting's failure to remove their booting devices; (iv) whether Plaintiffs and the proposed class are entitled to punitive damages and if so, in what amount

(Doc. No. 56 at 19). Defendant argues that Plaintiffs' claims rely on facts as they pertain to particular vehicle owners and therefore commonality is not present. (Doc. No. 65 at 8). For example, as to Plaintiffs' negligence claim,[9] Defendant asserts that that there are "any number of factors" that could affect whether a person breached the reasonable-duty-of-care standard or whether such breach was the proximate cause of a delay, such as traffic, wrecks, being busy etc. (Doc. No. 65 at 9). The Court construes Defendant's argument as addressing the "causation" element of Plaintiffs' negligence claim. In other words, Defendant appears to argue that there are

---

[9] Under Tennessee law, a negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation-in-fact; and (5) proximate or legal cause. *See West v. E. Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005).

individualized (case-specific) issues of causation because in some instances a technician may have been prevented from timely removing the boot from a vehicle for a reason not ascribable to Defendant.

Defendant's argument is unavailing. Plaintiffs have alleged that Defendant is liable for negligent bailment on the theory that enforcement of Defendant's business models and practices was negligent and caused the alleged injury in every case; the theory thus raised the questions, to which there should be a single answer applicable to all class members, of whether Defendant was negligent in this sense and such negligence can be deemed the cause of failing to meet the Ordinance's one-hour deadline.[10] Plaintiffs have also alleged an injury common to the class—that all class members were deprived of the use and enjoyment of their vehicle (Doc. No. 56 at 17). Plaintiffs have therefore alleged that the class members suffered the same injury and have raised an issue—whether Defendant was negligent under the above-described theory—that is capable of class-wide resolution.

Moreover, Defendant's argument misses the mark on a larger issue. Plaintiffs' theory of liability is not that each individual technician who did not unboot a vehicle within an hour was negligent. Instead, Plaintiffs allege that Defendant was chronically understaffed and improperly incentivized its employees to boot cars at a pace that would make fulfilling the requirement of unbooting cars within an hour implausible. (Doc. No. 56 at 6–7). For example, Plaintiffs allege that the technicians were paid on commission for booting cars, and that Defendant would pay the

---

[10] Plaintiffs are hereby on notice, however, that having chosen to assert this theory of negligence and causation (and only this theory of negligence and causation) in order to obtain class certification, they will be held to this theory by the Court. That is to say, to establish liability as to any particular class member, Plaintiffs must establish the particular version of negligence (breach of the duty of care) upon which they currently rely and must establish the particular kind of causation (causation between the allegedly deficient specified policies and practices and violations of the Ordinance) upon which they currently rely. The Court is tempted to discuss further the practical consequences of Plaintiffs' choices, but for now the Court will leave it at that.

technician who booted a car even when the boot was not removed with an hour, as long as a different technician was responsible for the boot removal. (*Id.*). In other words, if a technician placed a boot on a car during the 12:00 A.M. to 8:00 A.M. shift and a different technician working either the 8:00 A.M. to 4:00 P.M. or 4:00 P.M. to 12:00 A.M. shifts failed to unboot the car within an hour to request to do so, the technician who placed the boot would still receive commission for booting the car (thus failing to incentivize the technicians to unboot in a timely fashion). (*Id.* at 7). Plaintiffs further allege that Defendant was "chronically understaffed" during the class period, therefore increasing the risk that cars will not be unbooted within an hour. (*Id.*). Therefore, the issue of whether a particular technician acted reasonably in a given scenario appears largely irrelevant to Plaintiffs' theory of negligence. If a jury were to find that Defendant was negligent because of its policies and practices, then whether a technician was stuck in traffic or behind a wreck may become irrelevant (because Plaintiffs' theory is, in part, to the effect that Defendant was negligent in not staffing adequately to deal with traffic or wrecks).

Defendant contends that if the Court finds common questions to exist that "the Court will be tacitly, if not directly, holding that a violation of Nashville Ordinance § 6.81.170(E) creates strict liability for the violating booting company." (Doc. No. 65 at 10). This argument again overlooks that Plaintiffs allege that Defendant was negligent because of its specific policies and practices, which have purportedly led to the chronic problem of Defendant's employees being unable to unboot a car within one hour of the request to do so. Plaintiff's theory is that Defendant's violations result in liability because they are the result of policies and practices that reflect negligence; this is simply not a theory of strict liability for violations.

Therefore, the Court finds that there are common questions of law or fact such as to fulfill the commonality requirement under Rule 23.

### C. **Typicality**

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young*, 693 F.3d at 542. "This requirement insures [sic] that the representative's interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 128 (M.D. Tenn. 2020) (citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if his claims are based on the same legal theory." *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).

Plaintiffs asserts that the typicality requirement is met because the claims arise from Defendant's failure to unboot the Plaintiffs' cars within one hour, which is the same course of conduct from which the other class members' claims will arise. (Doc. No. 56 at 20). Defendant asserts that typicality is not met for the same reasons that commonality is not met. However, the Court has rejected Defendant's argument as to why commonality is not met. Moreover, the Court is not persuaded that the commonality and typicality requirements are the same such that they are equally susceptible to Defendant's argument. The typicality requirement demands that Plaintiffs' claims arise out of the same event or practice or course of conduct as the claims of putative class members. Plaintiffs have met this requirement because their claims and the claims of putative class member arise from the same practice or course of conduct—Defendant's alleged failure to unboot vehicles within an hour of a request to do so. Therefore, the typicality requirement under Rule 23 is met.

### D. **Adequacy**

Class certification also requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Weiner*, 334 F.R.D. at 128 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *See Senter v. General Motors Corp.*, 532 F.2d 511, 524–525 (6th Cir. 1976).

Plaintiffs assert that the adequacy requirement is met because there are no conflicts of interest between Plaintiffs and the putative class members, and Plaintiffs have a common interest with the putative class. (Doc. No. 56 at 20). Plaintiffs further state that they actively participated in discovery and "will continue to vigorously pursue the class claims throughout the remainder of the litigation process." (Doc. No. 56 at 21). By contrast, Defendant argues that adequacy is not met for the same reasons that typicality and commonality are not met. (Doc. No. 65 at 11–12). The Court has rejected Defendant's arguments with respect to typicality and commonality and rejects them here as they are posed with respect to adequacy. The Court finds that Plaintiffs have common interests with members of the potential class—namely recovery for the alleged torts of Defendant caused by Defendant's failure to remove boots that they placed on vehicles within one hour of a request to do so. Therefore, the Court finds that the adequacy requirement under Rule 23 is met.

### E. **Ascertainability**

The so-called ascertainability requirement is an "implied prerequisite" of Rule 23. *See Abadeer v. Tyson Foods, Inc.*, 3-09-cv-00125, 2014 WL 129318, at *3 (M.D. Tenn. Jan. 13, 2014). "Under the ascertainability requirement, Plaintiffs must show that the members of the class [are] *capable* of specific enumeration." *In re Nissan North America, Inc. Litigation*, 3-22-cv-00098, 2023 WL 2749161, at *13 (M.D. Tenn. Mar. 31, 2023) (internal quotation marks omitted). "This requirement is satisfied with a class description that is sufficiently definite so that it is administratively feasible for a court to determine whether a particular individual is a member by reference to objective criteria." *See id.*

Plaintiffs argue that the class is ascertainable because it is measured by "*objective* criteria: vehicle owners who waited more than one hour for Nashville Booting to remove boots from their vehicles." (Doc. No. 56 at 15) (emphasis in original). Plaintiffs further contend that Defendant has records of data points for when a vehicle owner first requested that Defendant unboot their car and when the boot was in fact removed. (*Id.*). Defendant does not dispute that there is accurate data indicating the time at which a vehicle owner requested removal of a boot. (Doc. No. 65 at 12).

The parties dispute, however, how to determine when a boot was removed from a vehicle (a determination necessary to deciding whether a vehicle owner waited over an hour for removal). Defendant contends that the only accurate way to determine whether a vehicle owner waited over an hour is by reviewing the explanations typed in by technicians into Defendant's "internal EPS system."[11] (Doc. No 65 at 13). Defendant explains that when a vehicle owner is made to wait over an hour for boot removal, they are typically not charged, and therefore the technician will add a note explaining why the vehicle owner was not charged. (*Id.*). As evidenced by a spreadsheet

---

[11] The parties do not define "EPS System."

produced during discovery, often the explanation given in such a note is that the vehicle owner had to wait over an hour for removal. (*Id.*).

Plaintiffs contend that a different method can be used to determine when a boot was removed. Plaintiffs explain that Defendant's contracted third-party call center made records of each request to unboot, including the date and time of the request. (*Id.* at 15); (Doc. No. 56-2 at 24). Plaintiffs also explain that when a boot was removed in an instance in which the vehicle owner was charged, the technician submitted the payment to the "EPS System," which then generates a "closing date and time," also referred to as the "closed date." (*Id.* at 16). Specifically, Brian Miller[12] testified in his Rule 30(b)(6) deposition[13] that pursuant to the organizational handbook of Defendant, a technician must enter the payment collection information into EPS "immediately" *after* payment is collected but *before* the boot is removed. (Doc. No. 56-2 at 25, 29). Therefore, the "closing date and time" that is generated by the submission of payment information will likely be slightly before the boot is removed. Importantly, Miller also testified that Defendant does not have a better way than looking at the "closed date" to determine when a boot was removed. (*Id.* at 25).

Defendant asserts that this method of determining when a boot was removed will not reflect "the exact time a boot was removed," and "close enough cannot be good enough" for assessing ascertainability. (Doc. No. 65 at 14). Defendant's argument, however, is not persuasive. First, Miller has already testified that there is no better way to determine when a boot is removed, and therefore Defendant's suggestion that the spreadsheet it produced is more reliable is not consistent

---

[12] According to his deposition, Miller is an operations manager for Defendant.

[13] A deposition taken under Federal Rule of Civil Procedure 30(b)(6) is one in which a designated individual testifies as a representative of a company, with such testimony generally being treated as the testimony of the company (as opposed to the testimony of the individual).

with the record. Second, Plaintiffs' method of using the "closing date and time" is actually favorable to Defendant because it pegs the time a boot was removed as being slightly earlier than the actual time, thus giving Defendant a greater chance of showing compliance with the Ordinance's one-hour deadline in any particular case and thereby reducing the size of the class—a reduction Defendant presumably would prefer. In short, to the extent that Plaintiff's method risks inaccuracy in the ascertaining class members, such inaccuracy is one that results in ascertainment of a class that is smaller than it should be. Defendant's concern that Defendant will be prejudiced because a boot may have been removed within "60 minutes" but the "closing date and time" reflects it was removed after "60 minutes and one second" is therefore unfounded.

Finally, Plaintiffs need only show that they can use "'traditional methods and models to identify class members' with *reasonable accuracy*." *See Chapman v. Tristar Products, Inc.*, 1-16-cv-1114, 2017 WL 2643596 (N.D. Ohio June 20, 2017) (quoting *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 524–27 (6th Cir. 2015)) (emphasis added). Therefore, Plaintiffs need not demonstrate that class members can be identified down to exact time (*i.e.* within seconds) that a boot was removed from a vehicle. To the extent that such inability to be any more accurate leads to some inaccuracy, such inaccuracy is (as noted above) one that does not disadvantage Defendant and thus is not grounds for eschewing a method that otherwise is sound and (according to Defendant's own 30(b)(6) deposition testimony). In light of Plaintiffs' explanation as to how the "closing date and time is generated," Defendant's own 30(b)(6) testimony indicating that closing date and time is as good a method as any to ascertain class members, and Defendant's failure otherwise to assert a colorable opposition, the Court finds that Plaintiffs have shown that the class is ascertainable under Rule 23(b)(3).

2. Federal Rule of Civil Procedure 23(b)(3)

Plaintiffs seek to certify this class primarily under Rule 23(b)(3) and therefore must meet the predominance requirement set forth in the Rule. (Doc. No. 56 at 4) "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prod., Inc.*, 521 U.S. at 623). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id*. The predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. *Id*.; *Thompson v. Allianz Life Ins. Co. of N. Amer.*, 330 F.R.D. 219, 225 (D. Minn. 2019). Plaintiffs assert that the common questions of law and fact described above with regard to commonality predominate over individual questions in this case.

**A. Common issues of law and fact predominate over individualized ones**

"A class action may be maintained only if it qualifies under one of the subsections of Rule 23(b) of the Federal Rules of Civil Procedure." *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). As the Sixth Circuit explained in *Beattie*,

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor,* 521 U.S. at 632, 117 S. Ct. 2231; *see also In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir.2001). To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.' " *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 136 (quoting *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir.2000) (internal quotation marks omitted)). Further, "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.' " *Id.* at 138 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir.2000)). Lastly, "[c]ommon

issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.

*Id.* "Generally, certification is granted in a tort case where there is a demonstrated cohesiveness of the class due to shared experience that is confined in time and place and produces similar effects." *See Collins v. Olin Corp.*, 248 F.R.D. 95, 102 (D. Conn. 2008) (internal quotation marks omitted). Plaintiffs assert that the predominance requirement is met because the factual and legal underpinnings of their claims are the same for all class members, and the claims can be proven using generalized proof. (Doc. No. 56 at 22). Plaintiffs have remaining three claims: negligent bailment, conversion, and trespass to chattel. (*Id.* at 4). Although "negligence claims are not the type of claim that is commonly certified under Federal Rule of Civil Procedure 23," there is "ample support in federal decisions for granting certification of negligence claims." *See In re Tri-State Crematory Litigation*, 215 F.R.D 660, 696 (N.D. Ga. 2003) (collecting cases).

Defendant makes the same argument for all three claims as to why the predominance requirement cannot be fulfilled. Namely, Defendant argues that there may be factors specific to each individual vehicle owner that affected the amount of time an individual had to wait for the boot to be removed (such as traffic, weather, ongoing events, wrecks), and that these individualized factors affect the ability to determine on a class-wide basis the issue of whether Defendant was negligent.[14] (Doc. No. 65 at 9–10, 15–17).[15] This argument relies on the same logic as Defendant's

---

[14] Defendant characterizes these individualized factors as "issues," but the Court disagrees that these factors are "issues" as contemplated under Rule 23. (Doc. No. 65 at 15). In the Court's view, an "issue" is something to be decided. Defendant's identification of possible factors, such as traffic or a car wreck, go to the "issue" of whether Defendant was negligent—but they are not "issues" in and of themselves. Therefore, the Court could stop its analysis there and say that Defendant has not identified any individualized "issues" under Rule 23 that risk predominating over "issues" common to the class. However, as explained throughout the Court's opinion, the Court also finds that the risk of these individualized *factors* does not undermine the existence and predominance of "issues" common to the class.

[15] With respect to Plaintiffs' negligence claim, Defendant asserts that whether Defendant acted reasonably will likely turn on the individual facts of each plaintiff. (Doc. No. 65 at 8–9). Defendant argues that the risk

argument as to why commonality and typicality are not met. More specifically, the argument is not really applicable to Plaintiffs' particular theory of negligence and causation; as discussed above, that theory (to which Plaintiffs will be held going forward) is specifically geared (successfully, as it turns out) to get around the kind of argument Defendant makes here.

The Court is not persuaded that the risk of individual issues arising as to Plaintiffs' claim means that individual issues predominate over issues common to the class.[16] *Bridging Communities, Inc. v. Top Flite Financial Inc.* is instructive here. 843 F.3d 1119 (6th Cir. 2016). In *Bridging*, the Sixth Circuit reversed the district court's denial of class certification for a class of individuals who received unsolicited fax advertisements from Top Flite Financial Inc. ("Top Flite") in violation of the Telephone Consumer Protection Act ("TCPA"). *See id.* at 1121. As the Sixth Circuit explained, the district court denied class certification on the grounds that "individual class members might have solicited or consented to receive the challenged faxes," which in turn would have required individualized investigation of the factual circumstances of each class member. *See id.* at 1123. Therefore, the district court found that common issues did not predominate over individualized ones. *See id.*

In reversing the district court, the Sixth Circuit explained that "speculation and surmise" as to a possible defense is not sufficient to tip the scales in a class certification ruling. *See id.* at 1125–1126. As for Top Flite's defense that some class members may have consented, the Sixth Circuit found that Bridging Communities had provided evidence "showing an absence of consent,"

---

of individual issues also arises with respect to Plaintiffs' trespass to chattel and conversion claims. (Doc. No. 65 at 9–10). For example, Defendant asserts that Plaintiffs' trespass to chattel claim requires a finding that "Nashville technicians knowingly or recklessly (i.e. intentionally) delayed the removal of a boot." (*Id.*). Defendant thus implies that where a technician was delayed due to reasons such as traffic or weather that were beyond the technician's control, the intentionality element of trespass to chattel will not be fulfilled.

[16] This especially true because such risk will be minimized by the Court holding Plaintiffs to their particular theories asserted in support of this Motion.

and that Top Flite's "speculation regarding individualized consent was insufficient to defeat [Bridging Communities'] showing of predominance under Rule 23(b)(3)." *See id.* at 1126. In concluding its analysis, the Sixth Circuit held that:

> mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3). [] Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases "wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.

*See id.* (internal quotation marks omitted). Similar as to how Top Flite in *Bridging Communities* suggested that individual issues of consent may predominate over common ones, Defendant in this case argues that there may be situations among the class members in which individual issues regarding the cause of the delay predominate over issues common the class. As with Top Flite with respect to its defense, however, Defendant has not provided any support to demonstrate that individual issues will arise with respect to Plaintiffs' claims. In Miller's deposition, Plaintiffs' attorney presented Miller with a list of all booting and unbooting jobs dating back to 2018. (Doc. No. 56-2 at 32). When asked whether Miller could identify a reason as to why any of the jobs on the list involved the vehicle owner waiting longer than hour, Miller stated that he could not do so. (*Id.*). Plaintiffs' attorney also asked Miller whether he had "any specific recollection of any particular [instance] where it took Nashville Booting longer than one hour to unboot someone's vehicle and there being factual circumstance[s]" that it Miller's view would make the delay excusable, to which Miller responded "No. . . ." (Doc. No. 56-2 at 34). Miller's inability to recall a single instance in which factual circumstances such as traffic, a wreck, road closures, would have justified delay greater than one hour seriously undermines Defendant's argument that these supposed factual circumstances warrant denial of class certification, and suggests that defendant here is relying upon the kind of speculation upon which the Sixth Circuit frowned upon in *Bridging*

*Communities*. And Defendant has supplied no alternative evidence to contradict Miller's testimony.

Further, as discussed above, Plaintiffs' theory of liability is that "Nashville Booting's *business model* and *staffing policies*" supports liability. (Doc. No. 56 at 6). Thus, with respect to Plaintiffs' negligence claim, for example, Plaintiffs do not suggest that each of the relevant technician's conduct was itself negligent—instead, the theory is that Defendant utilizes a business model and staffing policies that has caused injuries in a manner that amounts to negligence. Based on this theory, the Court can conceive of several questions that are common to the class and can be supported by generalized proof. For example, the jury will have to determine whether Defendant's failure to remove boots that it placed on vehicles within an hour to do so was attributable to a breach of its duty of care in the form of a policy and practice of inadequate staffing, and it will have to decide whether Plaintiffs suffered an injury in being deprived of the use of their vehicles after waiting longer than an hour for boot removal. The jury will also have to determine whether Defendant's business practice and policies were the cause of the delays.

As examples of generalized proof for its negligence claim, Plaintiffs assert that violation of the Nashville Booting Ordinance is evidence that Defendant acted unreasonably. (*Id.* at 22–23). Plaintiffs further point to Miller's deposition. (Doc. No. 56-2). Specifically, Plaintiffs point out that Miller testified that he agreed that waiting over one hour to remove a boot from a vehicle is "excessive" and "never appropriate" (Doc. No. 56-2 at 30, 33), which is to say "inappropriate in *every* case."

Similarly, although the elements of conversion and the elements of trespass to chattel are not identical to one another,[17] the basic questions underpinning both claims are similar and will be supported with the same generalized proof. As for conversion, the primary question will be whether a jury could view Defendant's failure to remove the boots within one hour of the vehicle owners' demands as a refusal to return the vehicles. (Doc. No. 37 at 15). As for trespass to chattel, the question will be whether a jury could view Defendant's failure to remove the boot within one hour as depriving the owner of use for a substantial period of time.[18] (*Id.* at 17–18). Both examples of generalized proof provided by Plaintiffs could support these claims.

It is not a mystery as to why there are so many common questions of law and fact that can be supported by generalized proof in support of the putative class members' claims. "[T]he facts of this case do not vary greatly from [] one Plaintiff to another. The facts of this case are essentially identical for every Plaintiff." *See In re Tri-State Crematory Litigation*, 215 F.R.D 660, 696 (N.D.

---

[17] "The elements of a conversion claim include: (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012). "To maintain [a] claim for trespass to chattels, the Plaintiff must be able to prove that Defendants wrongfully interfered with or injured Plaintiff's property . . . causing actual damage to the property or depriving the Plaintiff of its use for a substantial period." *Garner v. Coffee Cnty. Bank*, No. M201401956COAR3CV, 2015 WL 6445601, at *7 (Tenn. Ct. App. Oct. 23, 2015). "

"The difference between conversion and trespass to chattels 'is nearly always one of degree.'" Kauffman v. Forsythe, No. E201902196COAR3CV, 2021 WL 2102910, at *5 (Tenn. Ct. App. May 25, 2021) (citing Restatement Second of Torts §§ 217, 222A cmts. c, d)). "A plaintiff may recover for trespass to chattels upon showing that another party 'intentionally use[d] or intermeddle[d] with [the plaintiff's] personal property . . . without authorization.'" Id. at *4 (citations omitted). "A successful conversion claim, on the other hand, requires proof that the defendant appropriated the plaintiff's tangible personal property for his or her own use and benefit by intentionally exercising dominion over the property in defiance of the plaintiff's rights." *Id.* (citations omitted).

[18] It strikes the Court that Plaintiffs' pursuit of its trespass-to-chattel claim on a class-wide basis requires them to argue that a "substantial period of time" is anything greater than the one-hour time limit as set forth in the Ordinance. Indeed, an attempt to litigate whether each individual plaintiff was deprived of his or her vehicle for a "substantial period of time" based on circumstances unique to each plaintiff would be inefficient and contrary to the goals of Rule 23. Having chosen to seek class certification for its trespass-to-chattel-claim, Plaintiffs will have to abide by the demands imposed by Rule 23, which includes pursuing issues in a manner that subjects the issues to generalized proof.

Ga. 2003). Plaintiffs jointly allege that, as a result of defendant's policies and practice of inadequate staffing, they had to wait longer than an hour for Defendant to remove the boot on their vehicle, and that the wait caused them injury in the form of being deprived the use of their vehicle and of inconvenience. Defendant's speculation that some of the class members may have experienced factual circumstances that give rise to individualized issues is not sufficient to overcome predominance. And if at a later point, it becomes apparent that a defense is likely to bar claims against some class members, the Court can use procedural mechanisms available to it, such as placing the respective class members in a subclass. *See id.* In summary, based on the issues common the class that can be supported by generalized proof, the Court finds that the predominance requirement under Rule 23(b)(3) is met.

### B. Damages

"[C]ourts must conduct a 'rigorous analysis' to ensure at the class-certification stage that 'any model supporting a plaintiff's damages case [is] consistent with its liability case,' i.e., that the model 'measure[s] only those damages attributable to that theory' of liability." *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 523 (6th Cir. 2015) (quoting *Comcast v. Behrend*, 569 U.S. 27, 33–34 (2013)). Nonetheless, at this stage in the litigation, "the plaintiffs are not required to prove damages by calculating specific damages figures for each member of the class, but rather they must show that a reliable method is available to prove damages on a class–wide basis." *See In Processed Egg Products Antitrust Litigation*, 312 F.R.D. 171, 202 (E.D. Penn. 2015) (internal quotation marks omitted). "That is, Plaintiffs must show that there is a reliable means for measuring damages with reasonable accuracy in the aggregate." *See id.*

*Comcast* requires district courts to ensure that "a model purporting to serve as evidence of damages in [a] class action [] measure[s] only those damages attributable to [the plaintiffs']

theory." *See Comcast*, 569 U.S. at 35. "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *See id.* In other words, in such a situation, the plaintiff will not be able to prove predominance. Although "[c]alculations need not be exact . . . any model supporting a plaintiff's damages case must be consistent with its liability case . . . ." *See id.* Plaintiffs seek compensatory and punitive damages in this case.[19] The Court addresses the availability of these types of damages in turn below.

  *i.*    *Compensatory economic damages (use and enjoyment damages)*

As for compensatory damages, Plaintiffs request damages for the class members' inability to enjoy their property (also referred to as "economic damages") and for inconvenience (also referred to as "non-economic damages"). (Doc. No. 56 at 26). As for compensatory damages for the class members' inability to enjoy their respective vehicles, Plaintiffs suggest that damages can be calculated based on the rental value of the property. (*Id.*). Plaintiffs therefore suggest that the average daily cost of a rental car in Nashville during the relevant time period is the proper metric by which to calculate damages for the vehicle owner's inability to use their property. (*Id.*).

As explained by Plaintiffs in their reply, each putative class member who had the boot on their vehicle removed would be entitled to the average daily cost of a rental car. (Doc. No. 74 at 11 n.8). Any putative class member who waited more than 24 hours for boot removal would then be entitled to two days' worth of the average daily cost of a rental car, and so on and so forth. (*Id.*). Although this model requires some individualized findings, several courts have noted that "individualized issues relating to damages are insufficient to defeat class certification where other

---

[19] In their reply, Plaintiffs state that they have dropped their request for injunctive relief. (Doc. No. 74 at 3).

common issues predominate." *See Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 354 (S.D.N.Y. 2010). The Court is satisfied that the risk of individual issues as to the compensatory damages does not defeat class certification in this case. The Court finds that Plaintiffs' proposed method satisfies the requirement that a plaintiff demonstrate a single method capable of calculating individual damages across the class.[20]

ii.     *Compensatory non-economic damages (inconvenience damages)*

As for compensatory damages based on inconvenience (*i.e.* non-economic damages), Plaintiffs suggest that the jury can determine the damages amount by relying on "representative testimony from Plaintiffs and class members." (Doc. No. 56 at 26). Plaintiffs contend that this method is appropriate where the class members all experienced essentially the same inconvenience—having to wait over an hour for a boot to be removed. (*Id.* at 26–27). Plaintiffs

---

[20] The Court notes that there is some confusion among the courts as to the meaning of "calculation of damages on a class-wide basis." References to class-wide calculation of damages could indeed refer to the ability to calculate the damages of class members in the aggregate or the ability to use a single method to calculate damages for individual class members. A leading treatise on class action law explains as follows:

> Thus, courts—at the class certification stage—seek to ensure that the damage assessment, even if in the aggregate, is accompanied by a method for determining individual damages that is common across the entire class. The singularity of that method will ensure that the damage phase of the lawsuit is consistent with class action treatment.
>
> Thus, what becomes pertinent in many antitrust cases is whether, as the Supreme Court put it in 2013, "damages are capable of measurement on a classwide basis." Some courts similarly refer to this task as one of "classwide damages." These phrases are somewhat unhelpful because it sounds as if is referring to aggregate damages—and indeed other courts sometimes use the phrase "classwide damages" to mean aggregate damages. But the Supreme Court's point—and the certification problem—is not one about aggregate damages but about whether individual damages can be proven according to one method across the whole class. The law would be clearer if courts did not utilize the phrase "classwide damages" but instead identified the certification task as requiring the plaintiffs to demonstrate a *classwide method* for determining individual damages. Some courts helpfully utilize this more precise locution.

6 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 20:62 (6th ed.). Therefore, in referencing the calculation of damages on a class-wide basis, the Court refers not to aggregate damages but the ability to prove damages for each putative class member through a common method.

also assert that they are not required to provide a mathematical formula for inconvenience damages because "[t]he assessment of non-economic damages is not an exact science, nor is there a precise mathematical formula to apply in determining the amount of damages an injured party has incurred." *See Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W. 3d 414, 420 (Tenn. 2013). Therefore, "a plaintiff is generally not required to prove the monetary value of non-economic damages." *See id.*

The Court agrees that Plaintiffs are not required to provide a mathematical formula to support certification of claims that request inconvenience damages. However, the Court observes that at least one other court has noted that "inconvenience damages must truly encompass economic damages." *See Godun v. United Airlines, Inc.*, No. 16 C 4869, 2017 WL 11569125, at *5 (N.D. Ill. Feb. 15, 2017) (internal quotation marks omitted). In *Godun*, the court dismissed the plaintiff's claims for inconvenience damages because she did not identify an "economic loss resulting from the inconvenience [she] and her minor child experienced while being forced to dwell at the airport." *See id.* The court found that the inconvenience cannot be "simply based upon the discomfort, annoyance, and irritation [the p]laintiff experienced during the delay." *See id.*

As in *Godun* with respect to the plaintiff's claim for inconvenience damages, Plaintiffs here have not provided any indication that their claims for inconvenience damages encompass economic damages. The only ground for inconvenience damages provided by Plaintiffs is the "inconvenience of having to wait by their vehicles for" a technician to arrive. (Doc. No. 56 at 26). Plaintiffs already seek economic damages for not being able to use their vehicles. It therefore appears to the Court that any economic damage caused by inconvenience to Plaintiffs would be addressed through their claim of economic damages. The Court acknowledges that Plaintiffs seek to rely on *Freeman v. Norfolk Southern Corp.*, in which the court found that claims for private

nuisance permit a plaintiff to request "damages for inconvenience" and "injury to the use and enjoyment of the property." 3-03-cv-341, 2007 WL 2156753, at *3 (E.D. Tenn. Jul. 25, 2007). Plaintiffs, however, have not provided a basis on which *Freeman* should be extended to negligence, trespass to chattel, or conversion claims. Without a sufficient basis on which to support their claims for inconvenience damages, Plaintiffs also cannot provide a reliable method of calculation on a class-wide basis. Therefore, because Plaintiffs have failed to show that their claims requesting inconvenience damages encompass economic damages that will not already be addressed by their claim for economic damages, their request for inconvenience damages cannot be certified.

### iii. Punitive damages

Finally, the Court must also determine whether the proposed class can be certified with respect to punitive damages. "Punitive damages 'are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'" *See Day v. NLO*, 851 F. Supp. 89, 884 (S.D. Ohio 1994) (quoting *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 48 (1979)). "Punitive damages are not measured solely by the . . . injury suffered by a plaintiff, rather imposition of punitive damages is determined according to other factors such as the outrageousness of the injurious act, the defendant's motives and intent, and the nature and extent of the harm to the plaintiff." *See In re Air Crash Disaster at Gander, Newfoundland*, 684 F. Supp. 927, 931–32 (W.D. Ky. 1987). Although "an award of punitive damages requires a fact-specific inquiry into an individual plaintiff's circumstances, [] when the focus is on the defendant's conduct, as opposed to the class members' harms, and the relief is sought for the class as a whole, [] such individualized proof is

not *necessarily* required." *Palmer v. Combined Ins. Co. of America*, 217 F.R.D. 430, 438 (N.D. Ill. 2003).

In this case, Plaintiffs seek punitive damages on the grounds that Defendant's conduct was "intentional and reckless." (Doc. No. 1 at 17). Punitive damages are also sought as relief for the class as a whole. (*Id.* at 20). Plaintiffs' request for punitive damages therefore focuses on Defendant's conduct rather than the injury of each class member. Thus, punitive damages in this case can be determined on a class-wide basis.

As the court observed in *Palmer*, "[e]xactly how an award of punitive damages might be distributed need not be decided at [the class certification] stage—as long as there are viable options that can adequately address manageability concerns, that is enough for class certification. Difficulty in correctly awarding damages to a class alone cannot defeat a motion for class certification." *See Palmer*, 217 F.R.D. at 439. Although neither party addresses how punitive damages may be allotted among the individual class members, the Court foresees several possible options. Punitive damages can be distributed equally among class members or distributed *pro rata* based on the severity of the injury (*i.e.*, presumably length of time waited for boot removal). *See Palmer*, 217 F.R.D. at 439 (explaining that punitive damages can be awarded as a lump sum that is then distributed *pro rata*). And as the Sixth Circuit has explained, "because [r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal, in the mine run of cases, it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *See In re Whirlpool Corp. Front Loading Washer Products Liability Litigation*, 722 F.3d 838, 861 (6th Cir. 2013) (internal quotation marks and citations omitted). As noted above, the Court finds that questions common to the class predominate

over damages questions unique to class members. The exact formula used to distribute any punitive damages need not be determined at this juncture, as long as there exists some ability to do so. The Court finds that such distribution is possible and therefore Plaintiffs' request for punitive damages as part of the class certification is meritorious.

### E.  **Superiority**

Rule 23(b)'s superiority requirement provides the following four factors for courts to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Plaintiffs contend that a class action is the superior method of litigation for this action because common issues predominate, and Plaintiffs' ability to obtain relief through individual damages suits is not "economically feasible." (Doc. No. 56 at 24–25). Defendant argues that the superiority requirement is not met because common issues do not predominate. The Court has rejected the basis for this argument above.

The Court finds that a class action is the superior method of litigation here given that issues common to the class predominate over individualized ones, and class members are unlikely to be able to obtain relief through individual actions given the cost of bringing claims individually. The superiority requirement under Rule 23 is therefore met.

### F.  **Class Counsel**

"When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under [Federal Rule of Civil Procedure] 23(g)(1) and

(4)." Fed. R. Civ. P. 23(g)(2). Rule 23(g)(1) requires the Court, in appointing class counsel, to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Rule 23(g)(1) also lists other matters the Court may consider and actions the Court may take in appointing Class Counsel. Fed. R. Civ. P. 23(g)(1)(B)-(E). Rule 23(g)(4) requires Class Counsel to "fairly and adequately represent the interests of the class."

Plaintiffs request Kotchen & Low LLP  ("Kothcen") be appointed as class counsel. (Doc. No. 56 at 4). Defendant does not dispute that Kotchen will adequately represent the class. (Doc. No. 65 at 15). Plaintiffs have provided evidence to demonstrate that Kotchen has significant experience representing plaintiffs in class actions. (Doc. Nos. 56 at 21, 68 at 10). Kotchen also appears to have represented Plaintiffs from the outset of this litigation (Doc. No. 1), and thus was presumably involved in identifying the relevant claims and pursuing discovery. Based on the evidence put forward by Plaintiffs, the Court finds that Kotchen & Low LLP is qualified to be class counsel in this litigation.

<u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' motion for class certification at Doc. No. 56 will be granted in part and denied in part. Specifically, the Motion will be granted insofar as Plaintiffs request certification for claims seeking economic and punitive damages. The Motion will be denied insofar as Plaintiffs request certification for claims seeking non-economic damages (*i.e.* inconvenience damages). An appropriate order will be entered separately.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE